[Civ. No. 318.    Third Appellate District.—May 6, 1907.]

J. W. REED and C. E. PAINE, Respondents, v. J. W. COLLINS et al., BOARD OF SUPERVISORS OF MARIPOSA COUNTY, Appellants.

LICENSE—SALE OF LIQUORS—COUNTY ORDINANCE—ARBITRARY REFUSAL BY SUPERVISORS—MANDAMUS—FINDINGS—REVIEW UPON APPEAL.— Under a county ordinance regulating liquor licenses, where applicants for a license had been refused, and upon their petition for a writ of mandate to compel its issuance, the court found that they had followed the prescribed method to obtain the license under the ordinance, that they were fit and proper persons, that no exception was taken by the supervisors to their character or standing, and that the supervisors arbitrarily rejected their petition without cause, and the court granted the mandate, if no evidence is returned upon appeal from the judgment, it must be assumed that the evidence supported the findings and the judgment must be affirmed.

ID.—PROVISION IN ORDINANCE FOR "DUE CONSIDERATION"—ARBITRARY DISTINCTION.—The provision in the ordinance for "due consideration" of an application for a license simply means a consideration of the application upon its merits, and the return of a judgment based upon some substantial reason arising upon evidence heard, and does not justify an arbitrary distinction against the applicants.

ID.—GROUNDS OF REFUSAL MATERIAL—EXERCISE OF POLICE POWER.—The grounds upon which the governing body of a city or county bases its action in the refusal of a license to sell liquor by retail are extremely material and important. They are not confined to the terms of the ordinance, since, under a proper exercise of the police power granted by the constitution, a license may be refused upon sufficient grounds stated, shown by the evidence before it, addressed to the unfitness of the applicant, or the unsuitableness of the place at which the saloon is to be located.

ID.—CONCLUSIVENESS OF REJECTION FOR GOOD REASON.—When the evidence is taken upon a sufficient ground, and the result is the rejection of the application, the action of the governing board in ordering such rejection is conclusive, and not a question for judicial determination, unless it is made to appear that the evidence in no manner or degree developed any good reason for the rejection.

APPEAL from a judgment of the Superior Court of Mariposa County. J. J. Trabucco, Judge.

The facts are stated in the opinion of the court.

J. A. Adair, for Appellants.

John A. Wall, for Respondents.

HART, J.—Plaintiffs obtained judgment in the court below, granting a peremptory writ of mandate to compel the defendants, as members of and constituting the board of supervisors of Mariposa county, to issue to said plaintiffs a license to traffic within the limits of said county in the retail liquor business.

The defendants appeal from the judgment, upon the judgment-roll alone.

The plaintiffs made application for said license in accordance with the provisions of an ordinance, adopted by said board of supervisors on the fourth day of January, 1900, and designated and known as "Ordinance No. 73." This ordinance is set out in full in the complaint. The part of the ordinance which is important to the consideration of the question submitted here for adjudication provides that it shall be unlawful for any person or persons to "open, establish or conduct, or caused to be opened, established or conducted, any barroom or public saloon . . . where wines, spirit-

uous or malt liquors are sold by the glass, bottle or otherwise, in less quantities than one quart, within the limits of the county of Mariposa, without first obtaining permission from the Board of Supervisors, and filing a bond as hereinafter provided.'' Provision is then made that the application for such permission shall be made by petition in writing to the board of supervisors, and that "if, after due consideration of the same by the Board of Supervisors, the petition be favorably acted upon, it shall be the duty of the person in whose favor the petition was presented and the prayer of which was granted, before opening the said place, to file with the Board of Supervisors a good and sufficient bond, to be approved by the Chairman of the Board, with two sureties, in the sum of one thousand dollars, conditioned that the applicant shall maintain said place in a quiet, orderly and decent manner.'' After declaring that, on the third day of October, 1906, the said board of supervisors, at a regular meeting thereof, rejected said application and refused to grant the plaintiffs the license so applied for, the complaint proceeds to allege: ''That in making such rejection and in refusing to grant the said license, the said board of Supervisors took no exception whatever to the said petition, either as regards its form, substance or sufficiency in any respect, and said board of supervisors took no exception to the personal character or standing in the community of your petitioners or either of them, but on the contrary the members of said board found no fault with petitioners or either of them regarding their respective characters or standing in the community.'' It is also charged that ''the said action of the said board of supervisors in refusing to grant petitioners a license as asked for by them was purely arbitrary on the part of said Board and entirely without cause, and the action of said board in so rejecting said application of your petitioners was not in the exercise of any right conferred on said Board by any ordinance of the county of Mariposa, and was in violation of the provisions of the ordinance hereinbefore set forth and without right or authority.''

A general demurrer was interposed to the complaint by the district attorney, acting for and in behalf of the defendants, and overruled by the court. Thereafter an answer was filed denying the necessary and material allegations of the com-

plaint and affirming the right of defendants to refuse the
license, averring that in so doing they acted in accordance
with their official duty and within their authority under the
law. The court found the material facts as alleged in the
complaint to be true, and among others, "that in making such
rejection and in refusing to grant the said license, the said
Board of Supervisors took no exception whatever to the peti-
tion of petitioners, either as regards its form, substance or
sufficiency in any respect and took no exception to the per-
sonal character or standing in the community of the petition-
ers or either of them, but on the contrary, the said Board of
Supervisors found no fault with petitioners or either of them
regarding their respective characters or standing in the com-
munity. That at all the times mentioned in the petition the
petitioners herein are and at the time of making the applica-
tion for a license to the Board of Supervisors were fit and
proper persons to be granted a license for the purpose for
which they demanded the same and that such fitness of said
petitioners was at all times well known to the said Board of
Supervisors." The court also found "that the action of said
Board of Supervisors in refusing to grant petitioners herein
a license as asked for by them, was purely arbitrary and en-
tirely without cause," etc. The appeal being from the judg-
ment upon the judgment-roll alone, there is, of course, no at-
tempt made to present the evidence taken at the trial, and
it is further a matter of course, that the evidence heard by
the court must be assumed to fully support the findings.

The court below filed a written opinion, and the conclusion
reached appears to be largely, if not altogether, based upon
the ruling in the case of *Henry* v. *Barton*, 107 Cal. 535,
[40 Pac. 798]. That case seems to be on all-fours in respect
of the facts with the one before us, and it is there held that
the judgment of mandate awarded to the plaintiff was proper,
and it was therefore affirmed. The legislative or governing
body of the city of San Bernardino had adopted an ordinance
regulating the retail liquor traffic whose provisions, so far as
they concern the procedure to be followed in obtaining a li-
cense, are in effect the same as those in the ordinance before
us. The plaintiff, having in pursuance of the provisions of
said ordinance petitioned for a license to sell liquor at retail,
and the board of trustees of said city having refused to grant

5 Cal. App.—32

the same, petitioned the superior court for, and secured a peremptory writ of mandate compelling said board to issue to him such license. The court, in the case mentioned, says: "This action of the Trustees cannot be successfully maintained. The ordinances of the City of San Bernardino as they now stand, entitle any man who complies with their provisions to a retail liquor license, and this respondent complied with these provisions. Trustees of cities have no power except that given them by express provision of law, and we find no power in any of these ordinances vesting in them discretion as to the granting or denying an application for a liquor license. In the absence of some express legislative enactment granting such right there is no principle of law that will allow the trustees of any city to say that a liquor license shall be granted to A., and the same right denied to B." According to this opinion, then, it will be noticed there must be expressly vested in the governing body "a discretion as to the granting or denying of an application for a liquor license," otherwise, as we understand it, the license must, under any circumstances, issue. And this broad statement of the rule as declared in that opinion seems to be further justified by language previously expressed therein that "no evidence was taken in the case, and consequently we know nothing of the specific facts or grounds upon which this action of the trustees was based; but, as we look at the case, the *grounds, whatever they may have been, are wholly immaterial.*" (Italics are ours.) That case was decided in department. We deem it no impropriety, preliminarily to stating our conclusion here, to say that, so far at least as the writer of this opinion is concerned, we do not feel that we can concur in all that appears to be said in *Henry* v. *Barton,* 107 Cal. 535, [40 Pac. 798]. It has been repeatedly declared by the courts that the retail traffic in intoxicating liquors is a business in which a citizen or other person has no inherent right to engage; that the sale of such liquors in that form may be by the state, in the exercise of its power of police, entirely prohibited or suppressed, or the state may regulate its sale by the imposition of such conditions and restrictions as it may see fit to adopt, provided, of course, such conditions and restrictions in no way interfere with interstate commerce. (*Cromley* v. *Christensen,* 137 U. S. 91, [11 Sup. Ct.

Rep. 13] ; *Ex parte Christensen,* 85 Cal. 213, [24 Pac. 747] ;
*Ex parte Campbell,* 74 Cal. 20 et seq., [5 Am. St. Rep. 418,
15 Pac. 318] ; *Ex parte McClain,* 61 Cal. 437, [44 Am. Rep.
554].)

The grounds upon which a governing board of a city or
county bases its action in the refusal of a license to sell liquor
by retail are, it seems to us, extremely material and im-
portant. If the language of the opinion in the *Henry* v. *Bar-*
*ton* case is to be accepted as meaning that when a license is
once applied for in compliance with the provisions of an or-
dinance regulating the retail sale of liquor and which does
not in terms reserve to the governing board discretion to ar-
bitrarily refuse a license, that there is no other alternative
remaining to the board but to grant it, notwithstanding that
evidence may be taken to satisfactorily show the petitioner
to be a wholly unfit person to conduct a public barroom or
saloon, then, it seems to us, that the necessary corollary of that
proposition is that, while the board has the power to sup-
press the sale of liquor by retail altogether, if once it adopts
such an ordinance licensing it, it thereby surrenders the
power vested by direct grant from the constitution in the
municipality of which it is the legally constituted representa-
tive to afford full protection to the public by limiting ''to
the utmost the evils'' which are often the offspring of such
occupation. If we do not misapprehend the decision, its ef-
fect is as thus stated, and we feel no diffidence in declaring
that we are not prepared to accept the proposition as sound
law, or as an accurate construction of the police power. We
are of the opinion rather that, whatever may be the provi-
sions of an ordinance respecting the licensing of the retail
liquor business—whether in express terms it clothes the gov-
erning board with a discretion to grant or to refuse a license
in a given case or not—there is, nevertheless, reserved to said
board sufficient of the power directly granted to it, or to the
municipality for which it speaks, by the constitution (Const.,
art. II, sec. 11), over the subject to definitively and conclu-
sively determine, upon due investigation, whether a license
granted to a particular individual would be a public menace,
and if so, to refuse to so grant it, without occasion or ground
to fear that such action could not resist the coercive power
of the judicial arm of the government. There can be no

doubt that the trend of judicial opinion is pointed in the direction of committing to the local authorities, as the people through their organic law seem to have endeavored to do, a very extensive discretion in the matter of dealing with and regulating this, as well as other occupations which may, and often do, without reasonable regulation, tend greatly to the debasement and demoralization of the morals, health, peace and happiness of communities. Not only does this appear to be the judicial but as well the legislative policy of the state, for the legislature has limited the matter of the licensing of all classes of business by the boards of supervisors of counties and the legislative bodies of incorporated cities and towns to the purposes of regulation only. (Stats. and Amdts. of the Codes, 1901, p. 635, adding sec. 3366 to the Pol. Code.) There can be no question that if, after receiving a license to conduct a retail liquor business, the licensee should, contrary to the conditions of the bond required, suffer his establishment to become a disreputable or disorderly house, the board could recall or forfeit his license. Why, then, if before the granting of the license, evidence could be produced to show the applicant to be an unfit person to conduct such a place, or to be of a character or reputation to make the inference reasonably probable, that, if given a license, he would maintain his establishment in a manner modeled along the lines of his character or reputation, should not the board, regardless of whether the provisions of the ordinance gave it such discretion, have the power to reject his application and refuse him a license, and thus prevent damage rather than postpone action until perhaps some irreparable injury resulting from the issuance of the license had been suffered by the community? If evidence taken by the board should satisfactorily show that the applicant had once been incarcerated in a state prison for the commission of one of the meanest felonies known to the law, or that the place where it was proposed to locate the saloon was not the proper one for such a business—as, for example, that it was too near a public or private school or a church or in the residential part of the community, where it would be especially offensive—is it possible that the board would be powerless to prevent so grave a catastrophe as would follow the granting of a license under such circumstances, simply because the ordinance has not

expressly declared that there is vested in it discretion to say who shall or shall not have a license or where a saloon may or may not be located? The argument is often made that where so much power upon this subject is conceded to a municipal board the result may be, if such board should see fit to arbitrarily exercise it, the creation of a monopoly of the retail liquor trade in a community. The same argument may with equal force be addressed to the exercise of the same power of the board when it is expressed and specifically given in terms in an ordinance of regulation, as may regularly be done under the ruling in *Henry* v. *Barton, supra.* But the obvious reply to such arguments, it seems to us, lies in the fact, first, that public officers are presumed to perform their official duty faithfully, fairly and honestly, and secondly, that if, by the judgment of those agents of the state to whose sound discretion such matters are committed, it is concluded that the interests of the community they represent demand that the retail sale of liquor shall be so curtailed or restricted as that it may thereby result in placing it in the hands of a limited number of citizens, such consequence is only one of the many which may be expected to flow from necessary conditions which it is competent to impose upon the prosecution of an occupation in which the citizen has a right to engage, not because such right inheres in him, but only because he is permitted to exercise it by the mere sufferance or tolerance of the sovereign authority. These observations, though not necessary to a decision of the case before us, result, as we have indicated, from our interpretation of the language of the opinion in *Henry* v. *Barton*—that it is immaterial what the grounds of the rejection of an application for a retail liquor license may be, the board has no authority or right to reject, unless so empowered by some express legislative enactment, and that there is no principle of law, in the absence of such an enactment, "that will allow the trustees of any city to say that a liquor license shall be granted to A. and the same right denied to B." The effect of our views upon this subject, as we have endeavored to express them, is that the board has the right under any circumstances, whatever may be the provisions of the ordinance, to take evidence upon the question of the character or reputation of any applicant to determine whether he is a fit per-

son to whom to grant such a privilege, or to determine as to
the suitableness of the place at which it is proposed to main-
tain the saloon or barroom; that when evidence is so taken,
and the result is the rejection of the application, the action
of the board in ordering such rejection is conclusive, and not
a question for judicial interference and determination, un-
less it can be shown that the evidence in no manner or degree
developed any good reason for the rejection based upon the
character or reputation of the applicant, or in no manner
or degree militated against the location of the saloon at the
place proposed. These views are, we think, in a general way
in harmony with those often expressed by the supreme court
prior to the decision of the case of *Henry* v. *Barton*, 107 Cal.
535, [40 Pac. 798]. Of course we do not deny that where
the board acted arbitrarily or refused to grant a license with-
out reason, where such discretion was not expressly given it
by the ordinance, such action may be reviewed and a mandate
to require it to issue the license might lie. In other words,
the board may not, under such an ordinance, have the power
to refuse the license upon no reason, or what would be equiv-
alent thereto, upon pretended grounds which do not com-
port with common sense—as, for instance, that the applicant,
though a citizen, was not a native-born American, and like
nonsensical grounds.

We have thus expressed our views upon the subject under
consideration, because we felt that, as we must found our
conclusion here largely upon the opinion in the case to which
we have referred, and uphold the judgment of the court be-
low, it was only justice to ourselves to explain how far our
judgment would permit us to commit ourselves to the prin-
ciples as they appear to be declared in that opinion. We
know it to be our duty to follow ''the law of the case'' as it
has been declared by the highest court of the state. This,
of course, we propose to do here. But we know of no reason
why we should not state our own opinions, whatever they
may be worth, upon important questions coming before us,
even though they may to some extent conflict with those ex-
pressed by the court superior to this, where, as here, in reach-
ing a final conclusion we adhere to the rule, vital to the de-
cision, as laid down by that court. As stated, there is no sub-
ject with which the courts are called upon to deal of greater

concern to society than the police power, and, while upon the main point which must govern in the decision of this case we feel compelled to agree with the department opinion to which we have referred, we have not hesitated to present our own views, deferentially, of course, upon the important general questions to which we have given some attention. Indeed, the questions here discussed are of the greatest importance, for, within all the vast body of the law, with its endless ramifications and the infinite variety of its operations, there are not to be found doctrines which, when properly and intelligently applied, are more efficacious in the attainment of the best and highest ends and aims of organized society than those which are included in and belong to the great power of police inherent in every state of the Union. Over all the subjects coming legitimately within its range and scope, the state is sovereign and supreme. In its comprehensive sense, "it embraces," says Judge Cooley, "the whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." Or, as it is so forcefully and clearly put by Judge Blackstone, this power of which we speak is "the due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like members of a well-governed family, are bound to conform their behaviour to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations." These are, of course, elementary principles with which all students of the law are fully familiar, but their restatement, when appropriate occasion arises, can do no harm, for frequent repetitions of them might, to the infinite advantage of society in general, have the effect of impressing them upon the minds of those gentlemen to whom is committed the serious duty of making and amending our laws, or of those citizens in incorporated cities and towns clothed by their fellowmen with the authority of exercising cognate duties within a more limited territorial sphere.

In the case at bar, however, from the findings of fact filed by the trial judge, we are led to conclude that the board either heard no evidence whatever, other than that furnished by the general meager statements of the petition by plaintiffs for the license, or if evidence was taken, it found nothing against them, either as to character or reputation, or nothing militating against the issuance of the license because of the proposed location. The board, therefore, seems to have acted arbitrarily or without particular reason on the application.

The case, in view of the facts thus presented by the record, appears, as suggested, to be within the ruling in *Henry* v. *Barton,* 107 Cal. 535, [40 Pac. 798], and should, therefore, be affirmed.

The district attorney, in his brief, directs special attention to the language of the ordinance, "If, after due consideration of the same by the Board of Supervisors, the petition be favorably acted upon," etc., and says from that language it is "apparent that defendants reserved to themselves the right to grant or refuse a license for the carrying on of a saloon business."

We see nothing in the quoted language from which it may even be implied that the ordinance intended reserving to the supervisors arbitrary discretion to reject an application for a license. On the contrary, the phrase "due consideration" means a consideration of the application upon its merits, and the return of a judgment based upon some substantial reason arising upon the evidence heard. As stated, under the ruling in the case of *Henry* v. *Barton,* and by the provisions of the ordinance pursuant to which the application was made, there is no warrant for making an arbitrary distinction as against the plaintiffs here.

For the reasons given, the judgment appealed from will be affirmed.

Chipman, P. J., and Burnett, J., concurred.