[L. A. No. 22232. In Bank. July 11, 1952.]

FASCINATION, INCORPORATED (a Corporation), Respondent, v. EDWARD G. HOOVER et al., Appellants.

Irving M. Smith, City Attorney (Long Beach), Philip J. Brady and John R. Nimocks, Deputy City Attorneys, for Appellants.

Fred N. Howser for Respondent.

CARTER, J.—Defendants appeal from a judgment granting a writ of mandate commanding them to issue a license to plaintiff, a corporation, to conduct an amusement busi-

ness consisting of a game called "fascination" in the city of Long Beach. Defendants are Hoover, the city tax collector, Dovey, chief of police, and Sutherland, city prosecutor.

There are certain ordinances of the City of Long Beach covering the issuance of licenses to operate amusement games and other businesses. It appears that before a person may engage in business in said city he must obtain a license therefor from the city tax collector and pay certain fees; if he operates the business without a license he is guilty of a misdemeanor. In order to obtain a license he must submit with his application "such information as the tax collector may reasonably require." Under section 6.100 of Ordinance C-2232 the collector "shall thereupon refer such application to the appropriate departments of the city government in order that it may be ascertained whether or not the business proposed to be conducted or the premises in which it is proposed to be conducted or the premises in which it is proposed to locate such business, will comply with applicable laws and ordinances. Upon receipt of written notice from such departments that such business and the location at which it is proposed to conduct the same will so comply, it shall be the duty of the tax collector to prepare and issue a license to the person making application therefor upon the payment of the proper fees. In the event that a particular department of the city government shall reject an application for the reason that such business or the location at which it is proposed to conduct the same will not so comply with applicable laws and ordinances, the tax collector shall not issue such license. If, at the time of making application therefor, any money has been paid in excess of that required for the expense of conducting an inspection by the city, the city council shall, anything herein to the contrary notwithstanding, authorize the making of a refund to the applicant of such excess, upon receipt from the tax collector of information that such application has been rejected."

In compliance with the foregoing ordinance, plaintiff, on April 10, 1951, filed an application for a license to conduct an amusement business at a specified place and accompanied it with a description of the game to be operated. Each player is seated at a table and supplied with a ball which he endeavors to roll up a slope into holes in the table in front of him, with the aim of dropping balls in five holes

in a row. The ball then returns to him. The player who first achieves that goal is the winner. He receives merchandise, replay coupons or merchandise certificates.

The chief of police, Dovey, and city prosecutor, Sutherland, were the appropriate officials to which the application should be submitted under section 6.100 to ascertain whether the business would violate any law and the tax collector submitted plaintiff's application to them. After an investigation by those officers (further discussed later herein) they found and recommended to the tax collector that the game would constitute a violation of "certain sections" of the state Penal Code. Accordingly, the tax collector denied plaintiff's application on May 29, 1951.

Thereafter, plaintiff commenced this action for a writ of mandate to compel the issuance of a license to operate the business charging that Fascination is a game of skill rather than of chance and violates no laws; and that Dovey and Sutherland "studied and considered" the game but acted arbitrarily and capriciously in denying the application. Defendants' answer denied the pertinent allegations of the complaint. The trial court found that the game was intended to be one of skill, not chance, and that defendants acted arbitrarily, making only a cursory examination of the game and without substantial evidence. Accordingly, judgment was entered directing the issuance of the writ and the appeal now considered was taken therefrom by defendants.

At the opening of the trial plaintiff took the position that evidence as to whether the game was one of chance or skill should be received. Defendants asserted that the only admissible evidence was the extent and nature of the investigation made by them to ascertain whether they had acted reasonably and on sufficient grounds in denying the application. The court agreed with plaintiff and evidence pro and con as to whether the game was one of skill or chance was admitted.

On the issue of the investigation by defendants, Dovey testified that plaintiff's secretary, Gibbs, wanted Dovey and Sutherland to examine the game on May 3, 1951. They, accompanied by Rope, an investigator from Sutherland's office, three police officers, and the city electrician, went to where the game was being erected. They were there about an hour and a half examining the game. Dovey and the others, except the electrician, played the game. Dovey rolled 30 balls, the others rolled many more. The equipment was inspected. The

game was demonstrated by Gibbs and Dovey concluded it was a game of chance from "going it" himself and Gibbs' statement that he could not successfully operate it with the chevron out. (The chevron is a V-shaped protuberance on the table immediately in front of the ball receiving holes and the ball must be rolled over it.) He tried to make the ball go into certain holes. His test as to whether the game could be characterized as one of skill or chance depended on which predominated. The chevron made it impossible to control the course of the ball. The police officers told him it was a game of chance. Sutherland testified substantially to the same effect and also that he submitted a game exactly similar to a university professor. Gibbs testified that at the May 3d inspection he told them it was a game of skill; that the chevron made it more so; that by the exercise of skill the ball could be made to drop in a chosen hole; that the investigation took less than an hour; that Dovey and Sutherland rolled the ball seven or eight times; and that he was permitted to show them anything he wished about the game.

As before stated most of the record consists of evidence on the question of whether or not the game was one of skill or chance. Defendants contend that the admission of that evidence was error, their position being that the only evidence admissible was what was done and considered by Dovey and Sutherland in determining that question; that the finding that they acted arbitrarily is not supported by the evidence; and that in any event the matter should have been remanded to the officers to conduct a further and proper investigation if the one had was insufficient.

█ Putting aside for the moment the question of whether or not a notice and hearing in the traditional sense must be accorded the applicant for a license, it is clear that it was error to admit evidence in the trial court on the question of whether the game was one of skill or chance. Whether or not a notice and hearing is required, the applicant was not entitled to a trial de novo on the question inasmuch as we are dealing with a local administrative agency or officers. The authority to decide the question was vested in those officers. █ The trial court is limited to an examination of the matters considered and examined by the officers in arriving at their decision; to an ascertainment of whether such matters were sufficient to justify denying the license. (*Bank of America* v. *Mundo*, 37 Cal.2d 1 [229 P.2d 345]; *Nishkian* v. *City of Long Beach*, 103 Cal.App.2d 749

[230 P.2d 156]; *Kaiser Co.* v. *Reid,* 30 Cal.2d 610 [184 P.2d 879]; *Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746]; *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 P. 384]; *Hammond Lbr. Co.* v. *County of Los Angeles,* 104 Cal.App. 235 [285 P. 896]; *La Prade* v. *Department of Water & Power,* 27 Cal.2d 47 [162 P.2d 13]; *Cantrell* v. *Board of Supervisors,* 87 Cal.App. 2d 471 [197 P.2d 218]; see *Southern Cal. Jockey Club, Inc.* v. *California Etc. Racing Board,* 36 Cal.2d 167 [223 P.2d 1].)

Plaintiff cites *Saks & Co.* v. *City of Beverly Hills,* 107 Cal.App.2d 260 [237 P.2d 32], where the attack was on revocation of a zoning ordinance variance by a city council, and the court said that where there is pleading and proof that a local board acted arbitrarily, capriciously or fraudulently, the superior court will afford petitioner a trial de novo. If that means that such a trial may be granted where the question presented is the precise one the local ·agency had authority to decide and did decide, it is contrary to the foregoing authorities and must be disapproved. In *Mitchell* v. *Morris,* 94 Cal.App.2d 446 [210 P.2d 857], a permit to erect a residence on a lot was denied because of lack of access. The sole question there presented was the constitutionality of the ordinance, and the statement that the property owner must prove in court that his lot had adequate access in order to show the city agency's action was arbitrary, is dictum. What the court meant was, that plaintiff must show that the agency had no basis for the denial of the permit which embraced the conclusion that the access was adequate. The primary point involved in the Saks case was whether a hearing was accorded petitioner. ▮▮▮ But in a case where a hearing is required and none is had, the proper procedure, as will be discussed later herein, is to remand the case to the local agency with directions to afford petitioner a hearing rather than a trial de novo. The true rule with respect to this problem was stated by this court in *Bank of America* v. *Mundo, supra,* 37 Cal.2d 1, 5: "The question presented to the superior court in such an action is whether there was evidence of sufficient substantiality before the board to justify the finding . . . and in the absence of fraud or malicious or arbitrary use of its powers the board is the sole judge of questions of fact and of the values of property." That may mean in one sense that where there is no foundation for the agency's determination of the issue

it is authorized to decide, its determination will be annulled because it is capricious and arbitrary; the court, however, is confined to the matters considered by the agency. In another sense it means that evidence may be introduced in court showing matters outside those before the agency when the record of the proceeding before the agency will not show such conduct on its part, such as fraud, or the denial of a proper hearing, if a hearing is required, etc. In those instances it must be contended that the agency acted arbitrarily, capriciously, fraudulently or maliciously. Even in those instances it may be necessary for the aggrieved person to present, if he can, such claims to the agency and make a record there, but we do not decide that question here. In the case at bar the precise issue, whether it be denominated law or fact or a mixture of the two, which the officers had the authority to determine, was whether plaintiff's proposed business would violate the law—whether it proposed to operate a game of chance. The evidence admitted at the trial was aimed at that same question, an issue upon which a trial de novo could not be had. Plaintiff and the trial court seemed to think that it could not be determined by the court whether the action by the officials was arbitrary or capricious unless the court took evidence on the issue decided by the officials. That view is wholly out of harmony with the principles heretofore enumerated. If it were accepted there could be a trial de novo in every case. It would be the same as if on a review of a record on appeal on the ground of insufficiency of the evidence to support the trial court's findings, the appellate court would receive evidence to ascertain whether the trial court acted arbitrarily, without sufficient evidence.

Defendants assert, however, that the error, if any, was not prejudicial. It clearly was. As seen from the foregoing discussion of the facts it is quite doubtful that the evidence is sufficient to support the court's finding that the officers had insufficient basis for their denial of the license, that the game was one of chance. In view of the result reached herein it is not necessary to pass upon that point.

At the outset of the trial and several times thereafter when a discussion arose between counsel and court as to the admissibility of evidence on whether the game was one of chance, the court expressed the view hereinabove stated to be erroneous, that is, that such evidence was admissible to ascertain if the officers acted arbitrarily. For illustration,

when, at the beginning of the trial, the scope of the evidence was under discussion the trial court said: "There is not much question about the general principle of law but it seems to me in a case like this, you do have to take evidence about the merits, although you are not trying an issue. It is not a trial de novo, but trying the issues whether or not the officers of the board used their discretion arbitrarily. You almost have to see what the facts are about the issues they decided; not that you can substitute yours for them, if they made an honest determination. You may not agree with them but if you see that they could have reasonably come to the conclusion, then you had better let it stand, but it would be the same thing for instance on a license that should not be issued to anyone under twenty-one years of age, and the board refused on the ground that he was under twenty-one, that was their reason, and you come in here and they could show they made an investigation and following their investigation, they showed that he was under twenty-one, but if the other side wanted to produce evidence, they could show that he was over twenty-one. I think that evidence should be in, in answer to the other side, and whether they would have changed their idea or decision if it was known." Similar remarks were made on other occasions and finally in its "Memorandum of Decision" the court said: "The question as to whether the game is actually one of chance or skill, i.e., whether chance or skill predominates, is not a direct issue in this case. However I admitted evidence of the nature of the game, including that of the two experts who testified on opposing sides, as I feel that, in determining whether a sufficient hearing or investigation was had before the administrative decision was arrived at, not only the testimony of the expert relied on would be relevant, but also the testimony of other experts which might have been available to the investigators. Were handwriting an issue before an administrative agency and were it determined on the testimony of a bank teller who said it was that of a certain person, should not a reviewing court admit testimony of a Clark Sellers that the writing was not of that person in determining whether the evidence of the bank teller was substantial enough to support the decision of the administrative agency? It was for this limited purpose that the evidence of the experts was admitted herein. . . .

"For this reason I feel that the decision of the Chief of Police and the City Prosecutor was not at the time based on

substantial evidence but, to that extent, was arbitrary. Their determination that chance predominates in this game may be right, in which case the penal laws are effective regardless of city license, particularly 335a Penal Code, and this is true as to Lite-O-Line and the other games which are no less games of chance than Fascination. If one is such, all are. (This does not apply to target shooting, throwing balls at bottles, or darts at balloons, etc.)." While that memorandum cannot control the findings of the court (it did not find whether the game was one of chance but did find the officers acted without sufficient basis), and it is ordinarily presumed that in a trial by the court without a jury the court based its findings only upon admissible evidence, the record demonstrates that the court's judgment was based to a considerable extent, if not chiefly, on the inadmissible evidence. Hence, the error was prejudicial.

The judgment must, therefore, be reversed but to avoid the possibility of error in disposing of the case on retrial, more must be said. There are two important questions remaining: (1) Whether plaintiff was entitled to a formal notice and hearing of its application for a license before the officers, and (2) if it was, but such hearing was not afforded, or, if it was not, and it is found that the officers had no sound basis for their determination, should the judgment of the court be to remand the matter to the officers or an order for the issuance of the license?

On the second question it is settled that where determinative powers are vested in a local administrative agency and the court finds its decision lacks evidentiary basis, a hearing was denied or it was otherwise erroneous, it is proper procedure to remand the matter to the agency for further and proper proceedings rather than for the court to decide the matter on the merits. (See *Cason* v. *Glass Bottle Blowers Assn.*, 37 Cal.2d 134 [231 P.2d 6]; *English* v. *City of Long Beach*, 35 Cal.2d 155 [217 P.2d 22, 18 A.L.R.2d 547]; *Steen* v. *City of Los Angeles*, 31 Cal.2d 542 [190 P.2d 937]; *La Prade* v. *Department of Water & Power, supra*, 27 Cal.2d 47; *Martin* v. *Board of Supervisors*, 135 Cal.App. 96 [26 P.2d 843].) Plaintiff claims, however, that the officers were biased and prejudiced and it cannot obtain a fair and impartial decision from them. There is no finding to that effect, nor were they so charged in the complaint. Indeed the trial court in its opinion states its belief that they acted honestly

and in good faith. It is not, therefore, a matter which will now be determined.

■ Under the circumstances presented a notice and hearing were required. It will be recalled that section 6.100 of the ordinance provides that when an application for a license is made to the tax collector he must refer it to designated officers in order that it may be "ascertained" whether or not the proposed business would "comply with applicable laws and ordinances." If such officers give written notice to the collector that it will comply he must issue the license. If the officers reject the application because the business would violate the law the collector shall not issue the license. In other words, the license must be granted unless there is found cause for its denial. Manifestly it is contemplated that a factual or mixed factual and legal determination shall be made by the officers which is characteristic in the exercise of a quasi judicial function. *Martin* v. *Board of Supervisors, supra,* 135 Cal.App. 96, is clearly analogous. There the county ordinance regulating the sale of beverages containing above a certain percentage of alcohol, designated the board of supervisors as the licensing board for the issuance of licenses to sell beverages. A person desiring a license should apply in writing to the board giving such information as the board prescribed. Upon receipt of the application the board shall "investigate" and deny such application if the applicant and the premises to be used for his business would not conform to specified conditions. Plaintiff filed an application for a license which was denied by the board without notice or hearing. On mandamus the court directed the board to afford plaintiff a hearing, stating (p. 100) : "When a board of supervisors is charged by law with the duty of issuing licenses upon specified terms and conditions, that tribunal becomes a quasi-judicial body for determining the facts and exercising sound and reasonable discretion in the performance of its duty. Since a board of supervisors is only a quasi-judicial body in its investigation and determination of the merits of petitions for licenses in conformity with the provisions of an ordinance, its hearings may be somewhat informal and need not conform in all respects to the solemnity of a court proceeding. Nevertheless, the law does contemplate a fair and impartial hearing of an application for a license with an opportunity for the petitioner to present competent evidence for the consideration of the board. (*Reed* v. *Collins,* 5 Cal.App. 494 [90 P.

973]; 33 C.J. 548, §§ 138-141.) By the great weight of authority, as appears from the text in 33 C.J., at page 548: 'One who has made an application for license is entitled to a hearing by the licensing authority.' On page 549 of the same volume it is further said: 'Where the hearing on an application for a license is held before a court, or before a board which acts in a judicial capacity, the proceedings are in the nature of a civil action and are governed by the ordinary rules of judicial procedure applicable thereto.' . . . It is true that an individual has no vested right to engage in the business of selling intoxicating liquor. (*Ritz* v. *Lightston*, 10 Cal.App. 685, 689 [103 P. 363].) The regulation of that business is governed by legal principles different from those which apply to what may be termed inherently lawful avocations. While it is contended the ordinance which is involved in this proceeding purports to license only nonintoxicating beverages, we are satisfied the interpretation of this act should be governed by the same rules which apply to the regulation of intoxicating drinks. A court may not take judicial notice of just what percentage of alcohol mingled with beer, ale or wine will necessarily intoxicate a particular individual, or just what quantity of the beverage will have that effect. (33 C.J. 498, sec. 17.) . . . In spite of the fact that a vested right to engage in dispensing of these beverages may not exist, still the law contemplates a fair and impartial hearing of any application for a license which has been filed in strict conformity with the law. . . . It would be preposterous to concede that any judicial tribunal could be clothed with the arbitrary power of issuing licenses and regulating business subject only to its own caprice; that with or without a hearing on the merits of the application, with or without reason, or upon ex parte statements or rumors, with no opportunity of refuting them, the board could grant or deny a petition for license. This is not the purpose or spirit with which regulatory statutes are enacted. Law contemplates justice whether it is granted as a privilege or recognized as a vested right. We therefore conclude that the right to engage in the sale of beverages under the ordinance of Lake County may not be arbitrarily denied by the Board of Supervisors without a hearing or an opportunity on the part of the petitioner to present the merits of her application to the licensing tribunal." (See *Reed* v. *Collins*, 5 Cal. App. 494 [90 P. 973].) The Martin case has been cited with approval in cases involving the revocation of a license.

(*People* v. *Noggle*, 7 Cal.App.2d 14, 20 [45 P.2d 430]; *Carroll* v. *California Horse Racing Board*, 16 Cal.2d 164 [105 P.2d 110]; *Irvine* v. *State Board of Equalization*, 40 Cal. App.2d 280, 285 [104 P.2d 847]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara*, 85 Cal.App.2d 776, 797 [194 P.2d 148].) And it has been held that unless the statute expressly provides to the contrary a license cannot be revoked without a hearing where the statute contemplates a quasi judicial determination by the administrative agency that there be cause for the revocation; that because of reasons of justice and policy the statute will be interpreted to require a hearing. (*Ratliff* v. *Lampton*, 32 Cal.2d 226 [195 P.2d 792, 10 A.L.R. 2d 826]; *Carroll* v. *California Horse Racing Board*, *supra*, 16 Cal.2d 164; *La Prade* v. *Department of Water & Power*, *supra*, 27 Cal.2d 47; *Covert* v. *State Board of Equalization*, 29 Cal.2d 125 [173 P.2d 545]; *Steen* v. *Board of Civil Service Commrs.*, 26 Cal.2d 716 [160 P.2d 816]; *Bannerman* v. *Boyle*, 160 Cal. 197 [116 P. 732]; *Welch* v. *Ware*, 161 Cal. 641 [119 P. 1080]; *Knights of Ku Klux Klan, Inc.* v. *Francis*, 79 Cal. App. 383 [249 P. 539].) Other cases are in line with such statutory construction. (See, also, *Lloyd Sabaudo Societa Anonima* v. *Elting*, 287 U.S. 329, 336-337 [53 S.Ct. 167, 77 L.Ed. 341]; *Corcoran* v. *Board of Aldermen of Cambridge*, 199 Mass. 5 [85 N.E. 155, 18 L.R.A.N.S. 187].)

Reliance is placed on *McDonough* v. *Goodcell*, 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205], where it was said that the Constitution does not require a hearing of an application for a permit to engage in the bail bond business. Here, however, we are dealing with the interpretation of an ordinance, not constitutional law. Moreover, in the McDonough case a hearing was afforded.

There is some indication from the record that the visit to plaintiff's prospective place of business and the events that transpired there constituted a hearing or that a full hearing was waived. These are issues that will have to be ascertained on retrial.

The judgment is reversed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.