300 P.2d 831]

[L. A. No. 23679.   In Bank.   Aug. 17, 1956.]

NATHAN H. SCHUR, INC. (a Corporation), Plaintiff and Respondent, v. CITY OF SANTA MONICA et al., Defendants and Respondents.

ROY C. TROEGER et al., Appellants, v. CITY OF SANTA MONICA et al., Respondents.

( 11 )

LeSage & Bowman and Thomas W. LeSage for Appellants.

Caryl Warner for Respondents.

CARTER, J.—Nathan H. Schur, a corporation, commenced two actions against the city of Santa Monica and its police chief. In the first it asserted that an ordinance of said city, hereinafter mentioned, was unconstitutional in limiting the licenses that may be issued for conducting games of skill to one for each 12,000 inhabitants. In the second action it asserted that section 4226 of the city code, *infra*, is invalid because it is in conflict with the antigambling laws in the Penal Code; that the licensing of certain games by the city

officials is a crime on their part (Pen. Code, § 337); that the city, through its police chief, has issued licenses to Troeger and the other plaintiffs, hereafter referred to as Troeger, in the Troeger action (later mentioned) under its ordinances which are for games which are games of chance in violation of the Penal Code; that the city claims section 4226 and the licenses issued thereunder are valid; that because of the invalidity of the city laws and the licensing thereunder the city is illegally spending money in such licensing and in policing the games. To show its interest Schur alleges that it owns property in the amusement zone in the city which is adapted to conducting games and that it is a city taxpayer. It asks that the city be enjoined from carrying out the questioned laws and licensing thereunder and a declaration of the invalidity of them.

Troeger, and five other plaintiffs, commenced an action (hereafter called the Troeger action) against the city and its clerks and police chief alleging that they are the holders of licenses granted by the city for the conduct of amusement games; that they have submitted applications for the annual renewal of their licenses with the police chief but that he will deny their applications on the ground that their games constitute gambling proscribed by the Penal Code; that the games operated by them are of skill and not a violation of the gambling laws but that a dispute exists between them and the city on the subject. They ask for a declaration of their rights, that it be ordered that the licenses be issued to them and the city and its officers be enjoined from interfering with their businesses.

The two Schur actions and the Troeger action were consolidated for trial but the consolidation was vacated as to the first Schur action because of the result the court intended to and did reach in the second Schur action; that is, that the ordinance was valid but the games licensed and proposed to be licensed were a violation of the law aside from the claim of invalidity made in the first Schur action. Apparently the first Schur action is still pending and undecided but it is not of importance here.

Prior to trial and after motion therefor by Troeger and granted in that action, Troeger filed a supplemental complaint in which it was alleged that the police chief had denied plaintiffs' applications for a renewal of their licenses; that a due and regular public hearing after due notice given was had by the city council in which evidence was taken and a

reporter was present, and the council found that plaintiffs' games were not a violation of the gambling laws of the state and they were entitled to licenses; that notwithstanding such finding the police chief still refused to issue the licenses. It was further alleged that evidence was introduced at the hearing, and Nathan Schur, the principal owner of Nathan Schur, a corporation, appeared at the hearing and testified in opposition to Troeger's applications for licenses. The allegations of the supplemental complaint were admitted at the trial. There is no dispute about the occurrence of the events alleged in the supplemental complaint. Troeger's offer to the court of a transcript of the hearing before the council was refused and his request that the court review those proceedings was denied. Over his objection evidence was received on the question of whether the games were of skill or a violation of the Penal Code antigambling laws.

In its findings the court found Schur's allegations in its second action to be true except that the ordinance (city code section 4226) was valid; that the games for which licenses were sought by Troeger were of chance and violated the Penal Code; that the expenditure of public funds by the city in licensing the gambling games for printing, preparing and filing applications for licenses and wages for "administering such games" was illegal; that the city police chief lawfully refused licenses to Troeger and his coplaintiffs. The judgments declared the rights as found and enjoined the city "from expending . . . any public funds of the City . . . in the licensing of any said gambling games played or operated in violation of Chapters 9 and 10 of Title 9, California Penal Code; and said defendants . . . are . . . enjoined from expending or disbursing any public funds of the City of Santa Monica, for the printing, preparing, issuance, or filing of applications for permits or licenses for any of said gambling games played or operated in violation of Chapters 9 or 10 of Title 9, California Penal Code"; and that Troeger take nothing.

Troeger appeals from the judgment in each action, the second Schur action and Troeger action. At the trial of the consolidated actions the trial court heard evidence on the question of whether the games for which licenses were sought by Troeger were of skill or gambling. It refused to review the transcript of the hearing and finding of the city council which was set forth in Troeger's supplemental complaint.

Section 4226 of the city code of ordinances provides: "No person shall keep, conduct or maintain within the City any

house, room, apartment or place used in whole or in part as a place where any game not mentioned in Section 330 or 330a of the Penal Code of the State of California, is played, conducted, dealt or carried on with cards, dice, balls, billiard balls, pool balls, cues or other device when chance is the predominate or a substantial factor in determining any winner of such game or any portion, part or phase of such game and when for the winning of such game or any portion, part or phase thereof, any person received in any manner, money, checks, chips, credit or any other representative of value or any merchandise or anything of value; nor shall any person keep, conduct or maintain within the City any house, room, apartment, or place used in whole or in part as a place where any game not mentioned in Section 330 or 330a of the Penal Code of the State of California is played, conducted, dealt or carried on with cards, dice, cues or other device when skill is the predominate factor in determining the winner of such game, except such games of skill accommodating not more than 50 players or participants at any one time and for the playing of such game is paid in advance, and where the prize or award to any person for winning any such game or any portion, part or phase thereof consists only of merchandise not exceeding $25.00 in value." Section 6122 provides that any person required to obtain a license to engage in business "shall first obtain a permit to conduct such business from the Chief of Police. In order to obtain such a permit, a written application shall be filed with said Chief of Police, which application shall contain a statement of intention as to the location and extent of the premises to be occupied, and in addition such application for a permit to engage in any business licensed pursuant to Section 6207 of this Code shall contain the name of any person financially interested in the business in any manner. The Chief of Police, within a reasonable time after the submission of such application, *shall ascertain* that the proposed location is within the legal limits for such purpose, *and that the purposes for which the premises are to be used will not be in conflict with any laws of the State of California.* . . . When satisfied that there is no apparent danger to public health and safety of the people of the City, that the applicant, its officers or agents, if any, are morally responsible and have a good reputation, that the conducting of such business in such location will be in conformance with all laws and ordinances, the Chief of Police shall issue a permit to said applicant. Such permit

then shall be submitted by the applicant with the amount of the license fee required hereunder to the City Treasurer, who then shall issue the license provided for in this Code.

"Permits issued hereunder shall be effective for the same period as the license issued pursuant to such permit. Upon the expiration of the permit, an application for renewal thereof shall be filed in a like manner as an application for an original permit and such renewal permit shall be granted only when the requirements for the issuance of an original permit are met. Permits issued hereunder shall not be assignable." (Emphasis added.) Section 6207 specifies the license fee for the kind of games involved. No question is raised as to the propriety of the procedure of hearing and findings by the council after the police chief refused the renewal licenses as alleged in Troeger's supplemental complaint; hence it is assumed to be the proper step to be taken under the city's law.

Insofar as the Troeger action is concerned the trial court was clearly in error in not reviewing the determination of the city council in accordance with the holding of this court in *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260 [246 P.2d 656]. We are not concerned with the original complaint in the Troeger action or with whether relief could have been granted at that time* because as shown by the supplemental complaint, they followed the prescribed administrative proceedings available to them. They were applicants for licenses to operate certain businesses. They applied to the chief of police for licenses and were refused. They then demanded and were granted a hearing by the city council with the results above mentioned. All was done in accordance with city ordinances which required the denial of a license if the business, games here, sought to be licensed violated the state laws against gambling. In the Fascination case, *supra,* the laws of Long Beach contained substantially the same provisions with respect to licenses for games as do the city ordinances here. We there held that such laws called for a hearing on the application for the license by the city officials; that upon denial of the license a review by mandamus may be had in the superior court in which the question was not whether the games violated the state Penal Code but whether the evidence before the city officials was sufficient to support their

---

*At that time the police chief had not yet acted on the applications and Troeger had not pursued their administrative remedies. They did subsequently pursue those remedies as appears from their supplemental complaint.

determination that they did; that inasmuch as local officials were exercising a quasi-judicial function, the review did not include a trial de novo, the only evidence admissible being a record of what was presented to the local officials at the hearing. The only difference in the instant case is that the local hearing agency, the city council, found the games did not violate the law and Troeger was entitled to licenses but the police chief refused to issue them. No point is made of that difference and hence the trial court should have reviewed the record of the hearing before the city council as we held in the Fascination case. That it refused to do, and, therefore, the judgment in the Troeger action must be reversed.

The judgment in the second Schur action presents a different question. It will be recalled that the persons named by Schur as those who had had licenses issued to them were the same as the plaintiffs in the Troeger action. Basically the action was to enjoin the city officials from possibly committing a crime by issuing licenses for gambling games contrary to state law, although it was also asked that they be restrained from expending the city funds involved in issuing these particular licenses, and that is as far as the judgment went in regard to preventive relief, it did declare the games were contrary to the state laws. We believe that judgment cannot stand because the city officials were vested with authority to make the determination and the only method of relief therefrom was by a review of their action without taking independent evidence on the subject; that unless the conduct complained of constitutes a nuisance as declared by the Legislature, equity will not enjoin it even if it constitutes a crime, as the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding.

It is true that a taxpayer may obtain preventive relief against the illegal expenditure of funds by a municipal corporation. (Code Civ. Proc., § 526a; *Simpson* v. *City of Los Angeles,* 40 Cal.2d 271 [253 P.2d 464].)

There appears to be no reason, however, why a municipal corporation with valid authority to do so, holding a public hearing and making a quasi-judicial determination with reference to the issuance of a license to engage in a certain business, should be required to justify its action in a trial *de novo* in the court whether the one attacking its determination is a taxpayer or one of the applicants for a license. The local officials are vested with the power of determination and such determination is reviewable by mandamus or cer-

tiorari in which the issues are limited as set forth in *Fascination, Inc.* v. *Hoover, supra,* 39 Cal.2d 260. Here there was a public hearing on the precise issue, whether the games for which licenses were sought violated the Penal Code, and due notice was given to all concerned which would include a taxpayer. Moreover, Schur, the taxpayer, participated in the hearing. *Wirin* v. *Horrall,* 85 Cal.App.2d 497 [193 P.2d 470], is not to the contrary. There no local authorities were vested with valid authority to determine whether a person was entitled to a license. Here the local authorities were so vested and Schur participated in the hearing before the council. Its relief is limited as is Troeger's to a review of the action by the hearing body.

As heretofore seen, the Schur action is basically one to enjoin the alleged commission of a crime. In *People* v. *Lim,* 18 Cal.2d 872 [118 P.2d 472], the court held that although gambling places were nuisances under the common law they could not be abated unless made such by statute. There the district attorney was seeking to halt games by proceedings in court. The court said at page 876: "While these cases indicate that gambling houses were recognized as public nuisances in criminal prosecutions, they do not hold that an equity action on behalf of the state might be maintained at common law to enjoin the operation of a gambling house. On the contrary, it is clear that the jurisdiction of equity was very sparingly exercised on behalf of the sovereign to enjoin public nuisances. . . . An action on behalf of the state, therefore, to enjoin activity which violates general concepts of public policy finds no basis in the doctrines of the common law. . . . The courts of this state, however, have refused to sanction the granting of injunctions on behalf of the state merely by a judicial extension of the definition of 'public nuisance.' . . . The courts have thus refused to grant injunctions on behalf of the state except where the objectionable activity can be brought within the terms of the statutory definition of public nuisance. Where the legislature has felt that the summary power of equity was required to control activity contrary to public policy, it has enacted statutes specifying that such activity constitutes a public nuisance which may be enjoined in an action brought on behalf of the state. . . .

"Conduct against which injunctions are sought in behalf of the public is frequently criminal in nature. While this alone will not prevent the intervention of equity where a clear

case justifying equitable relief is present . . . it is apparent that the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. . . . The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted.'' (See Civ. Code, § 3369, subd. 1; *International etc. Workers* v. *Landowitz,* 20 Cal.2d 418 [126 P.2d 609].) Caution should be observed therefore upon retrial to avoid violating that rule. It should also be observed that whether licenses are or are not issued the criminal law is still open to Schur.

■ Schur claims its judgment is not subject to review, but as heretofore stated, the actions were consolidated and Troeger appealed from the Schur judgment which in effect prevents licenses from being issued to Troeger. Troeger is thus aggrieved and may appeal from and have reviewed the Schur judgment. (See *Kellett* v. *Marvel,* 6 Cal.2d 464 [58 P.2d 649]; *Wolfson* v. *Beatty,* 118 Cal.App.2d 392 [257 P.2d 1017].)

The judgments in both the Schur and Troeger actions are reversed.

Gibson, C. J., Traynor, J., Schauer, J., and McComb, J., concurred.