[L. A. No. 24364.   In Bank.   Feb. 15, 1957.]

LOUIS DAMIANI, Appellant, v. HARRY ALBERT et al., Respondents.

Herbert W. Simmons, Jr., Rosalind G. Bates and Roland S. Bates for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and Andrew O. Porter, Deputy County Counsel, for Respondents.

McCOMB, J.—From a judgment denying his application for a writ of mandate to compel respondents to reinstate him to a position he had formerly held as deputy sheriff of Los Angeles County, petitioner* appeals.

*Facts*: Petitioner, a deputy sheriff of Los Angeles County, was charged with filing a report he knew to be false stating that his superior officer, Sergeant Mallette, was intoxicated when serving as a uniformed officer at a junior high school dance on October 15, 1954. It was also charged that he violated rules of the sheriff's office requiring official communications to be sent through the "chain of command," and that he had previously been suspended twice for disciplinary reasons.

Petitioner was accordingly discharged for cause on November 18, 1954. He requested a hearing before respondent county civil service commission, which, after a formal hearing, sustained the discharge. He then petitioned the superior court for a writ of mandate, which was denied.

*Questions*: First. *Was there substantial evidence to sustain the findings of the commission and the trial court that petitioner (a) filed a false report, which he knew to be false, charging that his superior officer was intoxicated when serving as a uniformed officer at a junior high school dance on*

---

*Appellant is referred to herein as petitioner.

*October 15, 1954, and (b) violated the rules of the sheriff's office requiring that official communications be sent through the chain of command?*

*Yes.* ▇ On an application for a writ of mandate to review an order of a local quasi-judicial body such as the commission in the present case, the trial court does not have the right to judge the intrinsic value of the evidence or to weigh it. The power of the court is confined to whether there was substantial evidence before the commission to support its findings. (*Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260, 264 [2] [246 P.2d 656]; *Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [3], [4, 5] [229 P.2d 345]; *Nishkian* v. *City of Long Beach,* 103 Cal.App.2d 749, 751 [2] [230 P.2d 156]; *Cantrell* v. *Board of Supervisors,* 87 Cal.App.2d 471, 475 [2] [197 P.2d 218].)

▇ Applying the foregoing rule to the facts of the present case, the record discloses that:

(a) Petitioner filed a written report stating that his superior officer, Sergeant Mallette, was intoxicated when serving as a uniformed officer at a junior high school dance on October 15, 1954, between 8 and 9 p. m., that his speech was thick and his gait unsteady. Sergeant Mallette denied drinking any alcoholic beverage on the night in question, and testified he had not seen petitioner at the dance or after leaving the police station at 8 p. m. This testimony was corroborated by Officer William A. Weberg, who was petitioner's partner in the same radio car with him on the night in question from 7 p. m to midnight. He testified that when he saw Sergeant Mallette at the station at 8 o'clock he appeared to be perfectly normal and that neither he nor petitioner saw the sergeant between 8 p. m. and 12 p. m. that night.

The principal of the high school testified that he talked with the sergeant between 8 and 9 p. m on the night in question and he observed no evidence of his having used liquor, that his speech was normal, and that he walked in his usual alert manner.

On the witness stand, petitioner directly contradicted his own report by admitting that Sergeant Mallette's speech was not thick and that his gait was not unsteady.

(b) Section 1205 of the Manual of Policy and Ethics of the Sheriff's Department reads: "All official communications of the Department, whether moving downward, or requests, information, suggestions, or complaints moving upward, shall be confined to official channels. Each link in the chain of

18

command shall be respected in this regard. It shall be the responsibility of each echelon to forward communications to the next higher echelon with his approval, disapproval or recommendations.''

Captain Mullison, the officer in charge of the reserves, testified that petitioner accosted him in the hall at the sheriff's station and gave him information relative to the actions of one of the members of his group. In fact, Captain Pascoe was in charge of the station and was petitioner's immediate commanding officer. He testified that he had never given petitioner permission to communicate with Captain Mullison; that the proper way was for communications to go through the deputy to the sergeant and from the sergeant in turn to the captain; and that it was not regular or proper for a deputy to communicate directly with Captain Mullison.

Clearly, this and other evidence which was received support the findings of respondent commission and of the trial court. No useful purpose would be served by detailing other testimony which supports the questioned findings, and we therefore refrain from further discussion of the evidence. (*Thatch v. Livingston,* 13 Cal.App.2d 202, 203 [56 P.2d 549].)

Petitioner contends in his brief that section 1205 of the Manual of Policy and Ethics does not apply to communications ''with the emergency reserve.'' There is no merit in this contention for the reason that it does not appear whether Captain Mullison was a regular deputy sheriff or in the reserve and assigned to supervise the reserves. It is evident that following the chain of command for official communications was covered by section 1205, which says ''*All* official communications of the *Department*'' shall follow the chain of command.

Clearly, petitioner made a communication ''of the department'' and therefore he should have followed the chain of command. In any event, the point may not be considered here for the reason that it was neither raised before the commission nor in the trial court. ■ The general rule is here applicable that points not urged in the trial court may not be urged for the first time on appeal.

■ Second: *Did respondent commission err in receiving evidence that petitioner had been previously suspended for violation of the rules and regulations of the sheriff's office, to wit, on November 2, 1951, for five days, and on May 1, 1952, for thirty days?*

*No.* While such evidence standing alone might not be suffi-

cient to support disciplinary action, it was properly received and considered in connection with the question of the severity of the sentence to be given on the main charge. Petitioner was not prejudiced by such evidence for the reason that opposed to it commendable letters from the sheriff were also admitted and read for the consideration of the commission.

Petitioner was not discharged for having been suspended on previous occasions, but the fact of these suspensions was properly considered on the question of whether the facts alleged in the main charge were sufficient to justify a discharge. Obviously, a third violation of rules might well justify a discharge when the same conduct would not be sufficient to justify a discharge where there had been no previous disciplinary action.

The matter is well stated by petitioner's counsel in discussing the letters of commendation presented on behalf of petitioner when he said, "I think they come within the same area of relevancy that suspensions come in. They form a part of the personnel record and in considering whether or not the man should be discharged, the sheriff said he considered the man's record, and in considering the man's record he would certainly have to consider things that are a part of the record and this is certainly part of it. The question is whether or not he received any citations or commendations from the sheriff."

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied March 13, 1957.