RUBIN, J.
*1082 INTRODUCTION
This case concerns the elephants and the elephant exhibit at the Los Angeles Zoo. In litigation that began in 2007, plaintiffs and taxpayers Aaron Leider and the late Robert Culp sought to enjoin the continued operation of the elephant exhibit. They also fought to prevent the construction of a new, expanded elephant exhibit. According to plaintiffs, the Zoo had engaged in years of egregious abuse and neglect of the elephants in its care. They alleged the new proposed exhibit would not be large enough to ameliorate the problems inherent in keeping elephants in traditional zoo-like enclosures. The plaintiffs asserted the Zoo's conduct violated animal cruelty provisions in the Penal Code, and constituted illegal expenditures of, waste of, or injury to public funds and property. The defendants vigorously disputed the claims. After the grant of defendants' summary judgment motion, a reversal on appeal by this court, an amended complaint, and pretrial motions, the case went to trial.[1] The trial court rejected many of Leider's claims, but issued *1083 limited injunctions prohibiting the use of particular forms of inappropriate discipline, requiring the elephants have specific amounts of exercise time, and requiring the rototilling of the soil in the exhibit.
Both sides appeal from the trial court judgment. The defendants challenge a trial court order overruling their demurrer to the first amended complaint. The defendants contend Leider could not base his taxpayer claims on alleged violations of the Penal Code because of the principle that an injunction may not issue to enforce a penal law. They alternatively challenge the injunctions as exceeding the requirements of relevant statutes and regulations governing the care and maintenance of elephants. Leider, on the other hand, contends the trial court erred in failing to shut down the elephant exhibit. Leider argues the trial court improperly rejected certain of his claims based on Penal Code violations. He also challenges the trial court conclusion that he failed to establish a justiciable claim for injury to public property under Code of Civil Procedure section 526a, or a claim based on the violation of a federal regulation regarding animal enclosures.
We agree with the trial court that our decision in the first appeal was law of the case of Leider's right to bring a taxpayer action based on violations of certain Penal Code provisions concerning animal abuse. We alternatively conclude that Civil Code section 3369, which prohibits the issuance of an injunction to enforce a penal law does not apply to taxpayer suits. We also conclude that the trial court's injunctions concerning soil maintenance and exercise time were proper, but reject Leider's claims that the trial court erred by otherwise declining to close the elephant exhibit. We therefore affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
In 2006, in the face of opposition from at least one animal welfare organization to *271 the continued operation or expansion of an elephant exhibit at the Los Angeles Zoo, the mayor of Los Angeles sought an evaluation of the proposed exhibit and whether an elephant exhibit should be continued at the Zoo. After consideration, including public hearings involving the City Council, the City decided to proceed with an expansion and redesign of the elephant exhibit. In 2007, the Zoo had two elephants, one male and one female. At some point that year, the female elephant was sent to a sanctuary. In 2010, the Zoo acquired two female elephants from the San Diego Zoo; the United States Department of Agriculture had previously confiscated the two elephants from an individual in Texas. The Zoo now has three elephants.
The Zoo opened the new elephant exhibit in December 2010. Although the exhibit covers more than six and a half acres, the area available to the *1084 elephants is smaller due to structures that prevent the elephants from ranging freely across the entire exhibit, including electrically charged wires that keep the elephants away from certain areas with vegetation.
In 2007, Leider and Culp sued the City of Los Angeles and the director of the Zoo, John Lewis (collectively the City or defendants), in a taxpayer action under Code of Civil Procedure section 526a (section 526a). The complaint sought an injunction closing the existing exhibit and preventing construction of the new one. This is the second appeal in this matter. In the first appeal, the plaintiffs challenged a trial court order granting summary judgment to the City. This court concluded triable issues of fact existed regarding whether defendants had engaged or would engage in illegal expenditures in connection with the elephant exhibit and violation of Penal Code section 596.5.[2] We therefore reversed the summary judgment. (Culp v. City of Los Angeles (Sept. 23, 2009, B208520) [nonpub. opn.].)[3]
Following the remittitur, Leider filed an amended complaint seeking injunctive and declaratory relief. In addition to alleging the defendants had engaged in illegal acts under Penal Code section 596.5, the amended complaint contended the defendants' actions or omissions violated Penal Code sections 597 and 597.1, which are additional cruelty to animal statutes. As in the original complaint, the amended complaint alleged that between 1975 and 2006, multiple elephants at the Zoo died prematurely as a result of inadequate space and hard surface conditions, inadequate veterinary care, and mistreatment that included use of a bull hook. The amended complaint alleged the City's actions cost taxpayers "the unnecessary expenditure of millions of dollars." It further alleged the proposed expansion of the elephant exhibit would permit more abuse and waste of taxpayer funds. The amended complaint alleged the proposed expansion and continued operation of the exhibit violated public policies described in California Fish and Game Code sections 1600, 2051, 2052, 2116.5; California Code of Public Resources section 21001; Penal Code section 596.5; and the United States Endangered *272 Species Act of 1973 (16 U.S.C. §§ 1531, 4202).
The City demurred to the first amended complaint. For the first time in the litigation, the City contended Leider could not state a claim under section 526a for injunctive or declaratory relief because the claims challenged alleged *1085 violations of the Penal Code. The City based its argument on Civil Code section 3369, which states that "neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." The City additionally relied on a California Supreme Court case applying Civil Code section 3369 in a taxpayer action, Nathan H. Schur, Inc. v. City of Santa Monica (1956) 47 Cal.2d 11, 300 P.2d 831 (Schur ). The City argued the complaint failed to state a cause of action on any theory because the trial court had previously concluded, in connection with the City's motion for summary judgment, that plaintiff's waste claim was not justiciable, and this court's opinion reversing the summary judgment ruling did not disturb the trial court's prior conclusion on the waste theory.
Leider opposed the demurrer. He challenged the applicability of Civil Code section 3369 and Schur to his case. Leider further argued the demurrer did not establish the complaint failed to state any cause of action in that it did not address the allegation that the City was illegally expending funds by violating the public policies underlying provisions in the Fish and Game and Public Resources Codes, or the allegation that the City was injuring public property. Leider asserted all theories in the complaint were at large following this court's opinion in the first appeal, including waste and injury. In reply, the City again contended the demurrer resolved all of plaintiffs' claims because they were barred or not justiciable.
The trial court issued a tentative opinion addressing both the City's demurrer and Leider's motion for a preliminary injunction. After a round of supplemental briefing, the trial court overruled the demurrer. The court concluded the amended complaint alleged the City engaged in conduct such as electrical shocking and illegal use of bull hooks. As such, the court determined the amended complaint stated valid causes of action in alleging the City physically abuses its elephants in violation of Penal Code section 596.5. The trial court rejected the Civil Code section 3369 argument as "not open on remand" after our opinion in Leider I. In the context of Leider's motion for a preliminary injunction, the trial court considered several additional issues, including the proper analysis of the "injury to property" prong of section 526a. The court denied the motion on the ground that Leider had not demonstrated a probability of prevailing on the merits.
The case proceeded to a bench trial. In a detailed statement of decision, the trial court concluded that while the evidence did not establish definitively how much space an elephant in captivity needs, Leider had proved the ground of the elephant exhibit is hard, not varied or soft, and creates a risk of injury to the elephants' joints, feet, and nails. The court credited evidence establishing that the size of the exhibit contributed to compacted, hard soil as well as *1086 to contamination and increased risk of infection from the presence of urine and fecal matter in a small space. The three elephants exhibit "stereotypic behavior" which the court found was strong evidence that, with respect to at least the sole male elephant, the zoo is not meeting his needs. The court further credited evidence showing elephants in captivity inevitably develop foot problems as a result of a lack of *273 exercise. The court concluded the elephants are emotionally and socially deprived due to the limited choices and enrichment activities available to them, and, in the case of the sole male elephant, from living in isolation.
However, the court concluded Leider had not established the City was violating Penal Code section 596.5, which prohibits an elephant owner or manager from engaging in abusive behavior of the elephant. The court found the evidence did not establish the City's conduct violated Penal Code section 597, nor had Leider presented any evidence or authority that Penal Code section 597, subdivision (b) applied to elephants held captive in a zoo. Although the court noted the elephants are "hardly, as defendants contend, 'thriving,' " it concluded the City's conduct is "not abusive, does not amount to causing suffering, and is not cruel beyond the 'ordinary' circumstances of captivity (which plaintiff does not challenge)." The court found Penal Code section 597.1 does not apply to captive zoo animals.[4] Similarly, the court found the evidence did not establish the elephant exhibit runs afoul of a regulation promulgated the United States Department of Agriculture regarding space for animals in enclosures.[5]
*1087 The court further found Leider had not proved the City was engaged in waste within the meaning of section 526a, a theory Leider had asserted "almost as an afterthought." And, although Leider established the elephant exhibit is injuring the three elephants, the court concluded Leider had not provided "any applicable legal standard against which the court could measure or 'test' defendants' injurious (but not abusive) conduct toward the elephants in the Los Angeles Zoo."
Even so, the court concluded an injunction was appropriate to prevent the City from engaging in forms of inappropriate discipline that had been used at the Zoo in the past. Although the City asserted it had discontinued all conduct prohibited by Penal Code section 596.5, the court, after evaluating numerous relevant factors, concluded *274 Leider was entitled to an injunction enjoining the City from using bull hooks or electric shocks on the elephants. The court also found Leider proved a violation of Penal Code section 597t by establishing that soil compaction deprived the elephants of an adequate exercise area, and ordered the City to regularly rototill the soil and provide the elephants one to two hours of daily supervised exercise.[6]
Accordingly, in a final judgment, the court enjoined the defendants from using bull hooks and electric shock in the management, care, and discipline of the elephants at the Los Angeles Zoo. The court further ordered the defendants to exercise the elephants for a total of at least two hours a day, with appropriate breaks for the zoo staff and the elephants, unless weather or emergency conditions make such exercise impracticable. The court ordered defendants to rototill both the soil and the substrate of the elephant exhibit regularly, consistent with the standards and recommendations of two experts whose testimony was adduced at trial.
Both sides timely appealed from the judgment. On appeal, the City challenges the trial court order overruling the demurrer. The City contends Civil Code section 3369 barred Leider's action. The City alternatively argues the trial court erred in issuing the injunctions requiring exercise and rototilling because the terms of the injunction exceed the requirements of Penal Code section 597t and California regulations regarding elephant enclosures and exercise. In his cross-appeal, Leider argues the trial court erred in failing to order the City to close the elephant exhibit under the illegal expenditures prong of section 526a. Leider contends the undisputed facts indicate the City is illegally abusing the elephants under several Penal Code statutes, and *1088 closing the exhibit is the only remedy that would address the proven harms. Leider further asserts the trial court erred in finding no violation of Penal Code sections 596.5 or 597, or 9 Code of Federal Regulations section 3.128, and the court erred in concluding Penal Code section 597.1, subdivision (a) did not apply to animals held captive in a zoo. Leider also argues the trial court erred in its interpretation of "injury" under section 526a, which, he asserts, also mandated closure of the elephant exhibit.
STANDARD OF REVIEW
We review the trial court's decision to grant or deny an injunction under the abuse of discretion standard. (Horsford v. Board of Trustees of California State University (2005) 132 Cal.App.4th 359, 390, 33 Cal.Rptr.3d 644.) However, the evidence must support the trial court's exercise of discretion, and to the extent the trial court resolved disputed factual issues, we apply the substantial evidence standard of review. (Ibid.)
To the extent we are required to interpret statutory language, we confront issues of law that are resolved under the rules of statutory interpretation. (Ciani v. San Diego Trust & Savings Bank (1991) 233 Cal.App.3d 1604, 1611, 285 Cal.Rptr. 699.) Our primary task when interpreting statutes is to determine the Legislature's intent. "We first examine the words used in the statute and give them a plain and *275 commonsense meaning. If the language is clear and unambiguous, there is no need for construction or for resort to indicators of the Legislature's intent. [Citation.] A statute's literal meaning must be aligned with its purpose. Its meaning may not be determined from a single word or sentence. Instead, the words must be construed in context, and provisions relating to the same subject matter or that are part of the same statutory scheme must be read together and harmonized to the extent possible." (Harbor Regional Center v. Office of Administrative Hearings (2012) 210 Cal.App.4th 293, 310-311, 147 Cal.Rptr.3d 884 (Harbor Regional ), footnote omitted.)
"We must select a construction that best fits the Legislature's apparent intent; promotes instead of defeats the statute's general purpose; and avoids absurd or unintended consequences. [Citation.] The statute cannot be construed in a way that would make its provisions void or ineffective, especially if that would frustrate the underlying legislative purpose." (Harbor Regional, supra, 210 Cal.App.4th at p. 311, 147 Cal.Rptr.3d 884.)
*1089 DISCUSSION
A. The City's Appeal
1. Our Holding in Leider I Is Law of the Case that Leider's Action Is Proper
After our decision in Leider I, the City raised a new issue: that under Civil Code section 3369, which prohibits injunctions to enforce penal laws, the entire action was improper. The trial court overruled the City's demurrer on that ground, finding that our decision in Leider I was law of the case that taxpayer actions were a proper vehicle for challenging government spending that also violated the criminal law. We now consider the City's contention that the trial court erred.
1.1 General Principles of Law of the Case
Under the law of the case doctrine an appellate court decision stating a rule of law necessary to the decision of the case conclusively establishes that rule and determines the rights of the parties in any later retrial or appeal. (Yu v. Signet Bank/Virginia (2002) 103 Cal.App.4th 298, 309, 126 Cal.Rptr.2d 516 (Yu ).) The doctrine promotes finality and prevents piecemeal litigation of an issue by preventing the relitigation of issues that were already decided. (Ibid.) The rule extends to issues that were implicitly determined because they were essential to the prior decision. (Ibid.)
The law of the case doctrine has two limitations:
First, it does not apply to points of law that might have been, but were not, either explicitly or implicitly, decided in the earlier appeal. (Yu, supra, 103 Cal.App.4th at p. 309, 126 Cal.Rptr.2d 516.)
Second, the doctrine is procedural, not substantive. It may be disregarded in exceptional circumstances: (1) when there has been a manifest misapplication of existing principles that results in a substantial injustice, or (2) there has been an intervening or contemporaneous change in the law.[7] (Ibid.)
*276 *1090 1.2 The Leider I Decision
The trial court in Leider I had granted summary judgment for the City on the ground that Leider's taxpayer action, which was based on alleged violations of certain animal abuse statutes, presented a non-justiciable issue of public policy concerns that needed to be resolved as part of the political process. On appeal, Leider argued that once he had raised triable issues of fact that the City's treatment of the elephants violated the Penal Code's animal abuse provisions, he had satisfied the requirements of a taxpayer action.
The City acknowledged that a taxpayer action was proper when challenging "illegal government action," but argued that such an action was not proper where the real issue involved a disagreement over the manner in which the government has exercised its discretion to address a problem. The City also contended that the Penal Code provisions that Leider relied on did not provide a legal standard by which its treatment of the elephants could be measured.
We examined the allegations of the complaint, in particular those alleging that the City's treatment of the elephants violated Penal Code section 596.5, which makes it a misdemeanor to abuse elephants by conduct that includes: the use of electricity; physical punishment that results in damage, scarring, or breaking of skin; and other unspecified conduct. We first rejected the City's claim that the appeal was moot because the new elephant exhibit would be constructed with privately donated funds. In doing so, we held that Leider had standing to challenge the City's allegedly abusive conduct because City funds would continue to be used to operate the exhibit in an allegedly illegal manner. (Leider I, supra, slip opn. at p. 3.) We characterized section 526a as permitting taxpayer actions to challenge the illegal expenditure of public funds, and held that Leider had raised a triable fact issue that the City's treatment of the elephants violated Penal Code section 596.5. (Leider I, supra, slip opn. at pp. 7-8.) As part of our discussion, we also held that these claims were justiciable because Penal Code section 596.5 provided an adequate legal standard against which the City's alleged conduct could be measured, permitting an injunction enjoining such conduct if it were proven. (Id. at pp. 8-9.) Such a standard is necessary to ensure that private plaintiffs in section 526a actions "do not trespass into the domain of legislative or executive discretion." (Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 160-161, 101 Cal.Rptr. 880, 496 P.2d 1248.)
*1091 1.3 The City's New Challenge Was Implicitly Decided Against It In Leider I
In its current appeal from the ensuing judgment, the City now contends that the trial court erred in overruling its demurrer to Leider's entire amended complaint based on a new ground: that under Civil Code section 3369, as interpreted by Schur, supra, 47 Cal.2d 11, 300 P.2d 831, Leider was barred from seeking injunctive relief to enjoin violations of the Penal Code. We conclude that this issue was at least implicitly decided in Leider's favor in Leider I. Accordingly unless an exception applies, the law of the case precludes the City from relitigating this issue.
The decision in Yu, supra, 103 Cal.App.4th 298, 126 Cal.Rptr.2d 516, illustrates the rule that both "explicit and implicit conclusions of law establish[ ] the law of the case." (Id. at p. 310, 126 Cal.Rptr.2d 516.) The plaintiffs in Yu sued a credit card issuer for unlawful business practices. The first Court of Appeal decision reversed a summary judgment for the *277 bank, rejecting the bank's contention that a leading appellate decision was distinguishable. A second appeal was brought by the plaintiffs after the trial court, on remand, sustained without leave to amend the bank's demurrers to an amended complaint, and, in the second appeal, the bank argued for the first time that the leading appellate decision had been wrongly decided and was trumped by certain privileges.
The Yu court refused to consider these new arguments because they were barred by the law of the case. The Yu court held that the law of the case exception for issues that were not raised, but could have been, did not apply. Instead, the Yu court held that the bank was simply refining its previous arguments. (Yu, supra, 103 Cal.App.4th at pp. 311-312, 126 Cal.Rptr.2d 516.)
As the Yu court observed, "[l]itigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court," because it would be absurd to place a party who has chosen not to argue a point on appeal in a better position than one who argued that point and lost. (Yu, supra, 103 Cal.App.4th at p. 312, 126 Cal.Rptr.2d 516.)
In short, the law of the case doctrine is not defeated by simply raising a new argument that is essentially a twist on an earlier unsuccessful argument. With this in mind, we see little difference between Yu and the facts of this case. In Leider I, the City argued that Leider could not maintain his taxpayer action for Penal Code animal abuse violations because those code sections did not provide a sufficient standard to make his claims justiciable. We rejected that contention, holding that the relevant Penal Code provisions supplied an adequate legal standard by which the City's conduct could be tested. (Leider I, supra, slip opn. at p. 9.)
*1092 In the present appeal, the City contends again that under its new theory Leider may not obtain injunctive relief for conduct that violates Penal Code provisions. We disagree. By deciding that the animal abuse statutes provided a sufficient legal standard to make Leider's taxpayer action justiciable, we also implicitly decided that California law permits section 526a actions based on violations of the Penal Code's animal abuse provisions. In short, the City is simply trying to refine its earlier argument by asserting another reason why taxpayer action are not proper when based on the animal abuse provisions of the Penal Code.
We reject the City's reliance on Estate of Horman (1971) 5 Cal.3d 62, 95 Cal.Rptr. 433, 485 P.2d 785 (Horman ), for the proposition that Leider I did not implicitly decide the new issue it raises here. In Horman, the probate court ordered the distribution of a decedent's estate to non-residents. The State of California appealed, contending, as it had at trial, that the survivors had not sufficiently established their relationship to the decedent. The State prevailed at the retrial, but that judgment was reversed and another trial was held. At the third trial, the State for the first time raised the five-year deadline for asserting claims contained in Probate Code section 1026. The trial court found that the five-year period had been tolled while the previous actions had been pending.
In the final appeal, the Supreme Court rejected the survivors' contention that law of the case barred the State from raising Probate Code section 1026 because the State had not raised the issue during the first and second trials and appeals. The Supreme Court held that the earlier proceedings had reached only the substantive merits of the survivors' claims and therefore had not even implicitly reached the *278 procedural time bar of Probate Code section 1026. (Horman, supra, 5 Cal.3d at pp. 73-74, 95 Cal.Rptr. 433, 485 P.2d 785.)
We believe Horman is distinguishable because the new issue raised there was a procedural bar, while the earlier proceedings focused solely on the merits. In this case, as in Yu, supra, 103 Cal.App.4th 298, 126 Cal.Rptr.2d 516, the new issues raised-whether a taxpayer's action was proper based on violations of the Penal Code's animal abuse provisions-bore an analytically substantive relationship to the issues previously considered. (See also Greene v. Bank of America (2015) 236 Cal.App.4th 922, 932, 186 Cal.Rptr.3d 887 [law of the case did not preclude malicious prosecution defendant from raising new issue of collateral estoppel because earlier proceedings focused solely on the merits of the plaintiff's claims].)
*1093 1.4 Refusing to Apply Civil Code Section 3369 Will Not Create a Substantial Injustice
Even where law of the case would otherwise apply, we may disregard the doctrine if doing so would lead to a substantial injustice by a manifest misapplication of existing legal principles or if there has been an intervening change in the law.
As to the first exception, we assume for discussion's sake that Civil Code section 3369 does bar Leider's action, and that we would have so held had the issue been raised during the first appeal. Even so, we conclude that keeping the trial court's judgment in place by applying the law of the case doctrine to our decision in Leider I would not result in a substantial injustice.
Pursuant to the trial court's judgment, the City is barred from using bull hooks, a practice it said it had already stopped, and was ordered to rototill the soil in the elephant exhibit and make sure that the elephants get sufficient exercise. As the case law in this area makes clear, allowing this result to stand, even if in error, is not a substantial injustice.
We begin with People v. Shuey (1975) 13 Cal.3d 835, 120 Cal.Rptr. 83, 533 P.2d 211 (Shuey ), where the Court of Appeal issue a writ overturning the denial of defendant's motion to suppress evidence of the marijuana found in his apartment on the ground that an illegal search and seizure occurred when the police occupied his apartment for three hours while a search warrant was obtained. As part of its order, the Court of Appeal held that the prosecutor had waived the issue of whether a valid arrest based on probable cause had occurred. On remand, the trial court held a limited hearing on another issue-whether the evidence should be suppressed as the fruit of the poisonous tree. The trial court again excluded the evidence.
On appeal by the prosecution, the Supreme Court refused to consider the prosecutor's contention that a valid arrest had occurred. Relying on the law of the case doctrine, the Shuey court held that even if the finding of waiver in the first appeal had been in error, the substantial injustice exception to law of the case did not apply: "Yet if the rule is to be other than an empty formalism more must be shown than that a court on a subsequent appeal disagrees with a prior appellate determination. Otherwise the doctrine would lose all vitality and the [law of the case doctrine] would be reduced to a vapid academic exercise, since an unsuccessful petitioner for pretrial writ review could always maintain on subsequent appeal that the prior adjudication resulted in an 'unjust decision.' " (Shuey, supra, 13 Cal.3d at p. 846, 120 Cal.Rptr. 83, 533 P.2d 211.)
*279 Similarly, the court in Chase Brass & Copper Co. v. Franchise Tax Board (1977) 70 Cal.App.3d 457, 138 Cal.Rptr. 901 (Chase ) held that a previous *1094 ruling that erroneously allowed a corporation to underpay its state tax liability was protected from a new challenge to that issue by the law of the case doctrine. Even though the company would pay less tax than it owed, the Chase court held that law of the case applied and, albeit without discussion, held that doing so did not demonstrate a manifest misapplication of existing principles resulting in substantial injustice. (Id., at pp. 464-465, 138 Cal.Rptr. 901.)
To reiterate, in Shuey, law of the case was invoked to prevent the prosecution from raising an issue that could have defeated a criminal defendant's motion to suppress the key evidence against him. In Chase, the doctrine was invoked even though it allowed a corporation to underpay its state income tax. The Courts of Appeal in the final appeals found neither result worked a substantial injustice. Something more than an incorrect decision must be shown.
The City contends that a substantial injustice will result because its employees would risk losing their jury trial and higher burden of proof rights required in a criminal trial. It also argues that, depending on how we rule, it could also lose its $42 million elephant exhibit. As to the latter, our decision leaves the exhibit in place. As to the former, individual defendants are enjoined in their official capacities only. None has been prosecuted, sentenced, or fined. It is also doubtful that the judgment in this civil injunction case could have collateral estoppel effect in any criminal proceeding. (People v. Superior Court (Lucero) (1989) 49 Cal.3d 14, 20, fn. 3, 259 Cal.Rptr. 740, 774 P.2d 769.)
Otherwise, the City has failed to address whether the judgment as it currently stands will work any substantial injustice if it remains in place. The City must stop a practice (using bull hooks and electric shocks to discipline elephants) that it has disavowed, as well as exercise the elephants and turn the soil in the elephant exhibit. The City does not contend, and we do not believe, that such a limited remedy amounts to a substantial injustice. If anything, our decision tends to promote a just result, at least to the extent it aligns with the prohibitions of the animal abuse statutes and the requirements of federal regulations governing the treatment of elephants. (See 9 C.F.R. § 3.128 ensuring freedom of movement; 9 C.F.R. § 3.140 [humane handling procedures for transporting animals].)
This is not a case like Sefton v. Sefton (2015) 236 Cal.App.4th 159, 187 Cal.Rptr.3d 421, where the Court of Appeal refused to apply law of the case because the trial court's distribution of a substantial portion of the trust to one beneficiary was contrary to hundreds of years of rulings and deprived a rightful beneficiary of his share of the estate. (Id. at p. 172, fn. 6, 187 Cal.Rptr.3d 421.) Instead, as previously noted, the City must stop practices (using bull hooks and electric *1095 shocks to discipline elephants) that it has already disavowed, turn the soil in the elephant exhibit, and exercise the elephants. Under the authorities just discussed, such a result does not amount to a substantial injustice.
1.5 There Has Been No Misapplication of Existing Principles Because Schur Does Not Apply to Leider's Action
Ultimately, we reject the City's argument that the law of the case is inapplicable because the authorities on which they rely, Schur and Civil Code section 3369, do not apply here. We begin by setting forth the relevant provisions of *280 Civil Code section 3369 and Code of Civil Procedure section 526a.
Civil Code section 3369 was enacted by the Legislature in 1872. It provides: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law."[8]
Section 526a was enacted by the Legislature in 1909. It provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen or resident therein, ... who is liable to pay ... a tax therein."
Civil Code section 3369 's prohibition against injunctive relief where the conduct to be enjoined is criminal is designed to protect the defendant's rights to both a jury trial and the higher burden of proof required in criminal trials. (People v. Lim (1941) 18 Cal.2d 872, 880, 118 P.2d 472 (Lim ).) However, section 3369 does not apply where the criminal conduct also amounts to a civil nuisance that affects the complaining party's property rights. (Id. at pp. 879-880, 118 P.2d 472.)
The court in Schur, supra, 47 Cal.2d 11, 300 P.2d 831 considered the effect of Civil Code section 3369 on a taxpayer suit brought to stop the City of Santa Monica from issuing amusement licenses for games of skill that the plaintiff contended were in fact games of chance that violated the state's anti-gambling *1096 laws. The Schur court reversed a judgment for the plaintiff. The Schur court framed the issue before it as one to enjoin the city from committing a crime, even though the plaintiff asked that the city be enjoined from spending funds to issue the supposedly illegal licenses. (Id. at p. 17, 300 P.2d 831) The Supreme Court acknowledged that section 526a allowed taxpayers to obtain injunctions against a city's illegal use of funds. However, such relief was not proper where the City exercised its valid quasi-judicial authority to issue licenses following a noticed public hearing attended by the plaintiff, who could seek relief through an administrative mandate action. (Id. at pp. 17-18, 300 P.2d 831.)
The Schur court then discussed Lim, supra, 18 Cal.2d 872, 118 P.2d 472, and its holding that an action to enjoin someone's operation of an illegal gambling house was not permitted under Civil Code section 3369 because the Legislature had not declared such operations to be public nuisances. The Schur court used its discussion of Lim as a guideline for the trial court should there be a retrial: "Caution should be observed therefore upon retrial to avoid violating that [Lim ] rule. It should also be observed that whether licenses are or are not issued the criminal law is still open to Schur." (Schur, supra, 47 Cal.2d at pp. 18-19, 300 P.2d 831.)
In examining Schur's reach, we are guided by the rule that the language used in an opinion must be understood in light of the facts and the issues before the *281 court, and an opinion is not authority for a proposition not actually considered. (Elisa B. v. Superior Court (2005) 37 Cal.4th 108, 118, 33 Cal.Rptr.3d 46, 117 P.3d 660.) As we read Schur, it viewed the action as one to enjoin a crime, not as a taxpayer action to stop the illegal use of funds. Our conclusion is bolstered by the Schur court's failure to discuss the meaning of "illegal expenditure" in section 526a, as well as its reliance on Lim, supra, 18 Cal.2d 872, 118 P.2d 472, which was an action against a private party to enjoin a nuisance, not a taxpayer action.[9]
In fact, as Lim itself made clear, an injunction against criminal activity is proper where the Legislature provides for it. (Lim, supra, 18 Cal.2d at pp. 880-881, 118 P.2d 472.) Section 526a so provides. We begin by examining the statutory purpose behind section 526a. It provides "a general citizen remedy for controlling illegal government activity." (White v. Davis (1975) 13 Cal.3d 757, 763, 120 Cal.Rptr. 94, 533 P.2d 222.) Its primary purpose is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing *1097 requirement.' " (Blair v. Pitchess (1971) 5 Cal.3d 258, 267-268, 96 Cal.Rptr. 42, 486 P.2d 1242 (Blair ).) It is a remedial provision which must be broadly construed. (Id. at p. 268, 96 Cal.Rptr. 42, 486 P.2d 1242.)
To this end, our courts have endorsed taxpayer actions aimed at stopping unconstitutional police activity. (White v. Davis, supra, 13 Cal.3d 757, 120 Cal.Rptr. 94, 533 P.2d 222 [illegal covert surveillance activity by police]; Blair, supra, 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242 [challenging use of claim and delivery laws]; Wirin v. Parker (1957) 48 Cal.2d 890, 313 P.2d 844 [purchase of electronic eavesdropping equipment]; Wirin v. Horrall (1948) 85 Cal.App.2d 497, 193 P.2d 470 [use of illegal police blockades to search autos].) Closest on point in terms of the relief sought here is Cornblum v. Board of Supervisors (1980) 110 Cal.App.3d 976, 168 Cal.Rptr. 294, which allowed a taxpayer's action challenging a county jail's inhumane treatment of prisoners. Not one post-Schur decision interpreting section 526a has ever mentioned Schur or held that section 526a applies only to illegal acts that are not criminal acts.[10]
We next consider the language of section 526a, which permits taxpayer actions against "any illegal expenditures." (Italics added.) That phrase is not defined but is surely broad enough to include criminal acts in addition to acts otherwise prohibited by law. (Safeco Ins. Co. v. Robert S. (2001) 26 Cal.4th 758, 763, 110 Cal.Rptr.2d 844, 28 P.3d 889 (Safeco ).)
At issue in Safeco was the enforceability of an insurance policy exclusion for liability resulting from any illegal act. The Supreme Court said that "[t]he phrase 'illegal act' is susceptible of two reasonable meanings." Although the Court of Appeal had used a dictionary definition that construed the term broadly to encompass "any act prohibited by law ... the term can also be interpreted more narrowly as meaning a *282 violation of criminal law." (Safeco, supra, 26 Cal.4th at p. 763, 110 Cal.Rptr.2d 844, 28 P.3d 889.) The court also noted that several thesauruses treat the term "illegal" as synonymous with "criminal." (Ibid.)
"Broadly construed, a violation of any law, whether civil or criminal, is an illegal act." (Safeco, supra, 26 Cal.4th at p. 764, 110 Cal.Rptr.2d 844, 28 P.3d 889, original italics.) Had the insurer "wanted to exclude criminal acts from coverage, it could have easily done so." (Id. at p. 763, 110 Cal.Rptr.2d 844, 28 P.3d 889.) Because it chose not to do so, the Supreme Court could not read into the policy what the insurer had omitted. (Id. at pp. 763-764, 110 Cal.Rptr.2d 844, 28 P.3d 889.)
Although Safeco concerned the interpretation of an insurance policy under the ordinary rules of contract interpretation, it is instructive here. The *1098 primary rule of statutory construction is to ascertain the Legislature's intent by examining the entire statute. In doing so, we look first to the plain meaning of the words used, giving effect to the "usual and ordinary import of those words." (People v. Salcido (2008) 166 Cal.App.4th 1303, 1311, 83 Cal.Rptr.3d 561.) The Safeco court tells us that the term "illegal act" is susceptible of two reasonable constructions-a narrow one limited to criminal acts, and a broad one that includes both criminal acts and other forms of unlawful conduct. Given the mandate to broadly construe section 526a (Blair, supra, 5 Cal.3d at pp. 267-268, 96 Cal.Rptr. 42, 486 P.2d 1242), it strikes us that the plain meaning of "any illegal expenditure" within that statute includes criminal acts.
To hold otherwise would violate another rule of statutory construction-that when interpreting a statute, we may not read into the provision language that does not appear. (Doe v. City of Los Angeles (2007) 42 Cal.4th 531, 545, 67 Cal.Rptr.3d 330, 169 P.3d 559.) Given the plain and broad meaning of illegal expenditures, we would have to add the following language to prevent its application here: that taxpayers may bring actions to prevent a government's illegal expenditures except when the illegal conduct is also a criminal act.
If, as we conclude, section 526a does permit taxpayer actions to enjoin a City's illegal use of funds that also violates a penal law, then one more rule of statutory construction comes into play: when a specific provision and a general provision appear inconsistent, and the general provision standing alone would include the same matter as the specific provision, the specific provision will be considered an exception to the general provision regardless of which was enacted first. (Stone Street Capital, LLC v. California State Lottery Com. (2008) 165 Cal.App.4th 109, 119, 80 Cal.Rptr.3d 326.) With this rule in mind, Civil Code section 3369 and Code of Civil Procedure 526a can be harmonized as follows-while Civil Code section 3369 prohibits injunctive relief to affirmatively enforce a penal law, Code of Civil Procedure section 526a provides an exception for taxpayer actions aimed at stopping government expenditures supporting conduct that is criminal.
Finally, the concerns about enforcing the criminal law through a civil proceeding that animated the decision in Lim, supra, 18 Cal.2d 872, 118 P.2d 472, are not present here. In Lim, the plaintiff tried to enjoin a private party defendant from engaging in illegal conduct. The Lim court held an injunction was not allowed because the defendant would otherwise be subject to a trial for a criminal offense without the protections of a jury trial or the higher standard of proof required in criminal trials. In this taxpayer's action, by contrast, it is the government which will be prevented from engaging in illegal conduct, with *283 the Penal Code violations serving as the yardstick by which to measure its conduct. As we have already observed, any individual defendants are *1099 enjoined solely in their official capacities. No private parties will be prosecuted, and it is highly doubtful whether the judgment from a civil injunction proceeding would have any collateral estoppel effect in any later criminal prosecution. (People v. Superior Court (Lucero), supra, 49 Cal.3d at p. 20, fn. 3, 259 Cal.Rptr. 740, 774 P.2d 769.)[11]
1.6 We Choose to Not Follow the ALDF Decision, Nor Does ALDF Constitute an Intervening Change in the Law for Purposes of the Law of the Case Doctrine
After oral argument in this matter, the First District Court of Appeal filed its decision in ALDF, supra, 239 Cal.App.4th 1286, 192 Cal.Rptr.3d 89, holding that a taxpayer action based on an alleged violation of a criminal animal abuse provision was not proper. The City contends this is an intervening change of law such that we should not apply law of the case principles here.
In ALDF, the plaintiffs sued the state agency in charge of organizing the annual state fair, alleging that crates used to exhibit pigs at the fair were so small that their use constituted animal abuse under Penal Code section 597t, one of the precise violations at issue in the present appeal.
The ALDF court affirmed a judgment of dismissal after the trial court sustained without leave to amend the defendant's demurrer on the ground that violations of the animal abuse laws are not enforceable through a taxpayer action. The ALDF court first turned to its earlier decision in Animal Legal Defense Fund v. Mendes (2008) 160 Cal.App.4th 136, 72 Cal.Rptr.3d 553, where the plaintiff sued a business that raised dairy calves, alleging that they violated Penal Code section 597t by keeping the calves in small isolation crates. The Mendes court held that state laws authorizing certain corporations dedicated to preventing cruelty to animals to enforce those laws by filing complaints with a magistrate preempted civil actions by anyone else to enforce those laws.[12]
Based on this comprehensive statutory enforcement scheme, the ALDF court concluded that, assuming the state fair agency was violating the animal abuse laws, its conduct would not go unchallenged even in the absence of a taxpayer's action. As a result, the plaintiff lacked standing to bring its taxpayer's action. (ALDF, supra, 239 Cal.App.4th at pp. 5-7, 9, 192 Cal.Rptr.3d 89.) The ALDF court found support for its holding in Schur, supra, 47 Cal.2d 11, 300 P.2d 831. The ALDF court characterized Schur as holding that taxpayer actions to enjoin *1100 criminal conduct are not allowed where administrative remedies were available. Analogizing from that, the ALDF court concluded that the legislative enforcement scheme for violations of the animal abuse laws should also be viewed as the sole remedy for such violations. (ALDF, at p. 1301, 192 Cal.Rptr.3d 89.)
The City contends we should adopt the reasoning of ALDF and reverse the judgment for Leider. We decline to do so. The primary purpose of section 526a is to *284 "enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement." (Blair, supra, 5 Cal.3d at pp. 267-268, 96 Cal.Rptr. 42, 486 P.2d 1242.) Although Corporations Code section 10404 gives certain animal cruelty prevention organizations the power to file animal cruelty complaints and "aid in [their] prosecution," only public prosecutors may prosecute criminal offenses, and they have the sole discretion to determine whether to do so. (Gov.Code, § 100, subd. (b); People v. Eubanks (1996) 14 Cal.4th 580, 588-589, 59 Cal.Rptr.2d 200, 927 P.2d 310.)
Because the Los Angeles City Attorney's Office has apparently declined to prosecute the Zoo for animal cruelty, the Zoo's mistreatment of its elephants as found by the trial court has gone unchallenged. To hold that the power of a local humane organization to file a complaint bars a taxpayer action where the City refuses to prosecute itself undermines the very purpose of taxpayer actions. To the extent the ALDF court relied on Schur, we reject its holdings because, as discussed previously, Schur does not control.
For related reasons, we also hold that the ALDF case does not alter our law of the case analysis. First, the intervening authority exception to that doctrine applies to only Supreme Court decisions. (Carson Harbor Village, Ltd. v. City of Carson (2015) 239 Cal.App.4th 56, 70, 190 Cal.Rptr.3d 511.) Therefore the Court of Appeal's decision in ALDF is not eligible for such treatment. Second, because we reject that court's holding, we also conclude that there has been neither a misapplication of existing principles nor a substantial injustice based on that case.
Having concluded that Leider could bring his action based on alleged violations of the Penal Code's animal abuse provisions, we next consider whether the trial court's judgment in regard to those allegations was proper.[13]
2. The Order to Rototill the Soil on the Exhibit Was Proper
Penal Code section 597t provides: "Every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area.
*1101 If the animal is restricted by a leash, rope, or chain, the leash, rope, or chain shall be affixed in such a manner that it will prevent the animal from becoming entangled or injured and permit the animal's access to adequate shelter, food, and water."
The evidence showed that soil compaction led over time to numerous foot and other anatomical problems for the elephants. The evidence also showed that elephants are on the move for 18 hours a day in the wild, require at least one to two hours of supervised exercise in captivity, and received only 40 minutes of such exercise each day.
Based on this evidence, and pursuant to section 597t, the trial court ordered the City to regularly rototill the soil and make sure the elephants exercise one to two hours a day. We set forth the relevant portions of the trial court's factual findings: "Although the evidence is disputed about whether the elephants at the Los Angeles Zoo have 'adequate exercise area,' it is undisputed that the elephants do not get enough exercise time in their 'enclosed area.' According to witnesses called by *285 defendants, ... elephants in captivity require one to two hours of daily exercise, and the evidence is undisputed ... that the elephants ... get no more than 40 minutes of daily exercise, if that. Thus, although the evidence does not directly show that the elephants need more 'exercise area,' it is undisputed that they need more exercise time, which, because of the increased impact on the ground that more exercise would cause, requires more exercise area. Or rototilling, which would remedy the increased impact and resulting compactness and hardness of the ground of the exhibit on which the elephants need to increase the time they spend exercising."
The City contends the trial court erred in fashioning its injunction based on the need for more exercise time, not more exercise area, because Penal Code section 597t mentions only space, not time. The City also contends that the order must be reversed because regulations promulgated under the Fish and Game Code show that the elephants' exercise time and exercise area each met or exceeded the minimum lawful standards. We take each in turn.
Although the City contends that exercise time was the motivating factor behind the trial court's order, we believe the statement of decision was somewhat unclear and ambiguous in regard to the relationship between the need for more exercise time and the size of the exhibit. The City does not contend that it raised such an objection with the trial court, and does not address what strikes us as an apparent ambiguity. As a result, we resolve this ambiguity by inferring that the trial court decided the issue in Leider's favor. (Uzyel v. Kadisha (2010) 188 Cal.App.4th 866, 896, 116 Cal.Rptr.3d 244.) We believe the trial court tried, but failed to clearly express, that in order to *1102 accommodate the elephants' need to exercise at all, the soil had to be softened by regular rototilling. In other words, the risk of harm caused by soil compaction left the elephants with an inadequate exercise area regardless of its size.
We believe such a finding accords with the spirit and letter of Penal Code section 597t. No matter how large an exercise area might be, if other conditions render it unusable or unsafe for movement by an animal, the area cannot be adequate. For instance, a dog left in a confined space with sufficient room to move about would still have an inadequate exercise area if the ground were littered with broken glass, leaving it little safe room in which to maneuver. The evidence in this case showed that the elephants were prone to serious foot, leg, and other anatomical injuries from the repetitive stress of walking on compacted soil. Based on this, we conclude the trial court could find that their exercise area was inadequate despite its size unless the ground was softened.
The City also contends that the rototilling order is improper because the Zoo is in compliance with Department of Fish and Game regulations concerning the minimum standards for elephant enclosures. Fish and Game Code section 2120 calls for the promulgation of regulations concerning the transportation, importation, possession, keeping, and confinement of any and all wild animals. Section 671.3 of title 14 of the California Code of Regulations prescribes the housing requirements for numerous wild animals, including elephants. As relevant here, that regulation provides that "[e]lephants shall be provided free exercise unchained on dirt for a minimum of 5 hours per each 24-hour period." (14 Cal.Code Regs., § 671.3, subd. (b)(M)(2).)[14]
*286 The City contends that the regulation requires nothing more than that the elephants be allowed to move about on dirt, and says nothing about alleviating soil compaction. From this, it argues that its compliance with the regulation exempts it from the reach of Penal Code section 597t. We disagree.
Statutory or regulatory compliance is not a defense to tort liability because statutes and regulations ordinarily define only a minimum standard of conduct. (Myrick v. Mastagni (2010) 185 Cal.App.4th 1082, 1087, 111 Cal.Rptr.3d 165.) We believe that principle is applicable here, especially where the regulatory standards are expressly designated as the minimum standards. As discussed above, leaving an animal to exercise on a surface that is unsuitable and potentially harmful results in the failure to provide an adequate exercise area under section 597t.
*1103 Even if we affirm the rototilling requirement, we must still address the City's contention that the exercise duration requirement must be reversed because section 597t says nothing about how much time confined animals must be allowed to exercise, making that part of the order unlawful because it strays beyond the terms of the authorizing statute. (Armstrong v. Picquelle (1984) 157 Cal.App.3d 122, 129-129, 203 Cal.Rptr. 552.) The City also contends that the Fish and Game regulations have been satisfied because they require only five hours of free movement each day and the elephants are allowed to roam about as they choose nearly all day long.
As we read the trial court's statement of decision, the need for more exercise time is inextricably linked to the poor soil conditions in the exhibit, which have left the elephants with an inadequate exercise area. Ensuring that the elephants get a set amount of exercise time in conjunction with the regular rototilling of the soil is a way to measure whether the rototilling in fact allows the elephants to exercise properly at all. If the rototilling relieves the soil compaction problems and ultimately alleviates the physical ailments that the soil compaction causes, the trial court might then wish to remove or modify the exercise duration requirement. We believe the trial court should therefore retain jurisdiction to monitor the effects of the rototilling and exercise requirements it has imposed.
B. Leider's Cross-Appeal
In the following portion of our decision, we address the issues raised by Leider's cross appeal concerning: (1) the trial court's decision to have the elephant exhibit remain open, (2) the court's findings that the certain Penal Code provisions governing animal cruelty either had not been violated or were not applicable, and (3) that Leider was not entitled to relief under the injury prong of section 526a.
1. Substantial Evidence Supported the Findings the Conditions at the Elephant Exhibit Did Not Amount to Abuse or Cruelty as Defined by the Penal Code; Therefore the Trial Court Did Not Abuse Its Discretion by Declining to Shut Down the Elephant Exhibit
Leider contends that the trial court should have shut down the elephant exhibit based on the court's findings that the exhibit created conditions that were detrimental to the physical, social, and emotional well being of the elephants. This included findings that the elephants *287 were subject to physical and emotional suffering due to the soil compaction issues, the use of hot wires to restrict their movements away from trees and grass, and the absence of an outlet for the male elephant's sexual frustration. The trial court was also *1104 concerned about the level of care the elephants received because their keepers were ill informed and had misguided opinions about elephant care and behavior.
Despite these findings, the trial court concluded that the conditions at the exhibit did not amount to abuse or cruelty under Penal Code sections 596.5 or 597. Instead, the trial court found that the case "raises the question of whether the recreational or perhaps educational needs of one intelligent mammal species outweigh the physical and emotional, if not survival needs of another. Existing California law does not answer that question."
Leider contends the trial court erred because its own findings showed that the elephants were suffering. We believe substantial evidence supported the trial court's decision. Penal Code section 596.5 makes it a misdemeanor to engage in abusive discipline of elephants through a non-exclusive list of practices that includes: depriving them of food, water, or rest; using electricity; physical punishment that damages, breaks, or scars their skin; inserting any instrument into a bodily orifice; or using block and tackle. Penal Code section 597 proscribes cruelty to animals in general, and provides categories of conduct such as: maliciously and intentionally maiming, mutilating, or torturing an animal; overdriving, overloading, torturing, tormenting, or cruelly beating an animal; and depriving an animal of necessary food and water, or inflicting needless suffering or unnecessary cruelty. (Pen.Code, § 597, subds.(a), (b).)
These provisions mark how our society has evolved to date in regard to the treatment of animals. As the trial court suggested, the issues posed by this appeal mark the path ahead we may one day move down as our understanding and appreciation of our fellow creatures continue to move forward.
We agree that the exhibit places the elephants in an unnatural environment that is perhaps only an echo of their life in the wild. Setting aside the dangers posed by ivory poachers, we have no doubt the elephants would do better if they were not captive. We also recognize that animal sanctuaries might well provide a better form of captivity, and that a better zoo exhibit might be constructed. Even so, we cannot say that the current conditions constitute abuse or cruelty as defined in Penal Code sections 596.5 and 597. Instead, as the trial court observed, the deficiencies in the elephants' living conditions are in large measure by-products of their captivity.
In short, we conclude that substantial evidence supports the trial court's finding of the absence of abuse or cruelty under the law. At bottom, the scope of injunctive relief was a matter left to the trial court's discretion. Leider asked the trial court to shut down the exhibit. Despite the trial court's *1105 misgivings about the quality of care the elephants received and the shortcomings in their conditions of captivity, the trial court did not abuse its discretion by deciding that the deficiencies it found did not warrant the extreme step of shutting down the exhibit.[15] *288 2. The Trial Court Properly Denied Relief Under Penal Code Section 597.1
Penal Code section 597.1 makes it a misdemeanor for any owner or keeper of an animal "who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care...." (Pen.Code, § 597.1, subd. (a).) The statute goes on to provide guidelines for the seizure or destruction by humane officers of stray or abandoned animals. (Pen.Code, § 597.1, subds.(a)-(k).)
The trial court found that the elephants were not receiving proper care, but declined to award injunctive relief for two reasons: (1) the provision applied to only stray or abandoned animals, and did not apply to elephants kept in zoos; and (2) the section did not "provide a legal standard by which defendants' conduct can be tested for purposes of the 'illegal expenditure' provision of ... section 526a."
Leider contends the trial court erred because nothing in the statute limits it to stray or abandoned animals or precludes its application to zoo elephants. According to Leider, the trial court's finding that the elephants did not receive proper care-particularly in regard to the level and quality of veterinary care provided by the Zoo-virtually mandated an injunction closing the exhibit, or, alternatively, as stated in his appellate brief-take steps "to stop the violations which have been established."
We disagree. The court in People v. Untiedt (1974) 42 Cal.App.3d 550, 116 Cal.Rptr. 899 (Untiedt ) construed section 597f, which requires proper care and attention for animals that have been "abandoned or neglected," and concluded that the statute applied to only such animals. (Id. at p. 553, 116 Cal.Rptr. 899.) Section 597.1, subdivision (a) refers to animals that are "stray or abandoned," and, by the same logic, must apply to only such animals.
*1106 The Untiedt court also held that the phrase "proper care and attention" had to be construed in context with its companion Penal Code provisions concerning abuse of and cruelty to animals. (Untiedt, supra, 42 Cal.App.3d at p. 554, 116 Cal.Rptr. 899.) When viewed in that context, proper care and attention means inadequate care likely to result in the infliction of unjustifiable pain, suffering, or cruelty. (Ibid.) As previously discussed, though less than optimal, the care and treatment of the elephants does not amount to cruelty under the applicable Penal Code provisions. The injunction the trial court issued may very well ameliorate the most serious of the problems the elephants face in captivity. Because the trial court will maintain jurisdiction to oversee the implementation of the injunction, the court will have further opportunity to reconsider the treatment of the elephants in the future.
3. Reversal In Favor of Leider Is Not Compelled Under the Injury Prong Element of a Taxpayer's Action
The trial court declined to provide further injunctive relief under the injury prong of section 526a under the principle that a taxpayer's action is not proper where there is no legal standard against which the government's conduct can be measured and the action would intrude into the domain of legislative or executive discretion. (See *289 Harman v. City and County of San Francisco (1972) 7 Cal.3d 150, 160-161, 101 Cal.Rptr. 880, 496 P.2d 1248 [trial courts "cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards. [Citation.]"].)
Leider contends the trial court erred because it found the elephants were being injured by the conditions at the zoo, and because section 526a clearly applies to such injuries independent of that statute's waste and illegal expenditure prongs.
We appreciate Leider's contention but ultimately find it unpersuasive. First, we affirm the trial court's injunction imposing rototilling and exercise requirements on the Zoo. That leaves shutting down the exhibit as the only other unfulfilled request for relief. We realize that the harm suffered by the elephants is both cumulative and, because it can occur only in the future, to some extent, speculative. We agree with the trial court that there is no standard by which to measure this type of harm in order to justify closing a multi-million dollar public exhibit.
DISPOSITION
The judgment is affirmed and the trial court shall retain jurisdiction to monitor whether the City is complying with the rototilling and exercise time *1107 requirements and to modify those orders as appropriate if warranted by changed conditions. Plaintiff and cross-appellant Leider shall recover his costs on appeal.
I CONCUR:
FLIER, J.

Were I considering the City's argument as challenging errors that warranted reversal of the final judgment, irrespective of the propriety of the ruling on the demurrer, the standard of review and the analysis would be the same. The issues presented are legal questions which we review de novo.

Former Civil Code section 3479 stated: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance." (Amended by Code Am. 1873-74, ch. 612, § 284.)

Leider's amended complaint did not involve alleged governmental actions whose very legality was the subject of a public hearing or quasi-judicial decision. There were public hearings relating to the City's decision to expand and redesign the elephant exhibit. But the record does not indicate that any entity involved in the hearings had the authority to determine whether the Zoo had violated or would violate the Penal Code in the operation of the elephant exhibit.

The interpretation of a statute is a question of law we review de novo. (Lazarin v. Superior Court (2010) 188 Cal.App.4th 1560, 1569, 116 Cal.Rptr.3d 596.)

We need not accept the City's argument that "as otherwise provided by law" refers only to unfair competition as set forth in Business and Professions Code section 17200, et seq. Other statutes specifically providing for injunctive relief to enforce a penal law may fall within the gambit of the "otherwise provided by law" exception of section 3369. (See e.g., Pen.Code, § 136.2 [court may restrain conduct intimidating or dissuading a witness or victim].) The point here is that in light of Schur, section 526a is not, and, as interpreted in Schur, never was, one of those provisions.

Amicus curiae Animal Legal Defense Fund contends that if this court interprets section 3369 as prohibiting injunctive relief under section 526a to enforce a criminal law, such an interpretation will take away a "crucial tool" currently used to "ensure the robust enforcement of California's animal abuse statutes, in cases where the government fails to satisfy its legal obligations towards animals." Although I am sympathetic to this argument, we may not interpret statutes of broad and general application with only one particular policy purpose in mind. Regardless of the required liberal construction of section 526a, Schur dictates that the statute's broad reach does not extend to enjoining alleged violations of penal laws in contravention of section 3369.

We asked for and received supplemental briefing on whether one new decision-Animal Legal Defense Fund v. California Exposition and State Fairs (2015) 239 Cal.App.4th 1286, 192 Cal.Rptr.3d 89 (ALDF )-showed that applying law of the case here would constitute a misapplication of existing legal principles and whether it affects the merits of the City's appeal. Because both issues overlap, we will discuss this new decision separately in section 3. of our DISCUSSION.

Civil Code section 3369 was amended in 1977 to delete specified exemptions for unfair competition actions and insert the exception for actions as "otherwise provided by law." Leider contends this amendment opened the door to taxpayer actions based on Penal Code violations, while the City contends that it referred to the unfair competition laws. On its face, the "as otherwise provided by law" amendment seems to encompass any statutory authorization for injunctive relief. We need not resolve this issue, however, because our interpretation of sections 3369 and 526a is based on the pre-1977 version present in Schur.

Even the court in ALDF, supra, 239 Cal.App.4th 1286, 192 Cal.Rptr.3d 89, believed that Schur stood for no more than the proposition that a taxpayer action based on violation of a criminal statute is not proper where an administrative remedy is available. (Id. at p. 1301, 192 Cal.Rptr.3d 89.)

With one exception: the decision in ALDF, supra, 239 Cal.App.4th 1286, which we mentioned in footnote 7, ante, was the first to mention Schur in connection with section 526a. We asked for and received supplemental briefing from the parties on the applicability of that decision, which we discuss post.

In its supplemental briefing the City contends that, under Schur, Leider lacks standing to bring this taxpayer's action. Because we conclude that Schur and section 3369 are not applicable here, the standing argument founded on those two authorities fails.

The Mendes decision did not mention Schur, Code of Civil Procedure section 526a, or Civil Code section 3369.

The trial court enjoined the City from using bull hooks and electricity as methods of controlling the elephants. Although the City contends the trial court erred because it had discontinued those practices, the City concedes the issue and we therefore do not reach it.

The regulation also sets minimum space standards for housing elephants. (14 Cal.Code Regs., § 671.3, subd. (a)(10).) Because our analysis turns on the soil quality, not the size of the enclosure, we need not address that issue.

Leider also contends that the City violated a federal regulation requiring that elephants must be in enclosures that "provide sufficient space to allow each animal to make normal postural and social adjustments with adequate freedom of movement. Inadequate space may be indicated by evidence of malnutrition, poor condition, debility, stress, or abnormal behavior patterns." (9 C.F.R. § 3.128.) The trial court expressly rejected such a finding because the exhibit allowed the elephants to make normal movements. We see no basis for overturning the factual finding.